# UNITED STATES BANKRUPTCY COURT
## DISTRICT OF MASSACHUSETTS
### EASTERN DIVISION

|  |  |
|---|---|
| In re | **Chapter 11** |
| **CLARK-CUTLER-MCDERMOTT COMPANY**, *et al.*,[1] | **Case No. 16-** |
| Debtors. | **(Joint Administration Requested)** |

**APPLICATION OF THE DEBTORS FOR ENTRY OF AN ORDER PURSUANT TO 11 U.S.C. §§ 327(a) AND 328(a) OF THE BANKRUPTCY CODE AUTHORIZING THE EMPLOYMENT AND RETENTION OF CONWAY MACKENZIE CAPITAL ADVISORS LLC AS INVESTMENT BANKER TO THE DEBTORS *NUNC PRO TUNT* TO THE PETITION DATE**

Clark-Cutler-McDermott Company ("CCM"), together with its affiliate CCM Automotive Lafayette LLC ("Lafayette" and, together with CCM, the "Debtors"), hereby submit this application (the "Application") pursuant to sections 327 and 328 of title 11 of the United States Code (the "Bankruptcy Code"), Rule 2014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Rule 2014-1 of the Local Bankruptcy Rules for the United States Bankruptcy Court for the District of Massachusetts (the "Local Rules"), for entry of an order substantially in the form attached hereto as **Exhibit A**, authorizing the Debtors to retain and employ Conway MacKenzie Capital Advisors LLC ("Conway MacKenzie") as investment banker, effective *nunc pro tunc* to the Petition Date, in accordance with the engagement letter attached hereto as **Exhibit B**. In support of this Application, the Debtors submit the *Declaration of Donald S. MacKenzie in Support of Chapter 11 Petitions and First Day Motions and Applications* (the "MacKenzie Declaration"), which is attached hereto at **Exhibit C**. In further

---

[1] The Debtors in these chapter 11 cases are Clark-Cutler-McDermott Company and CCM Automotive Lafayette LLC. CCM's corporate headquarters are located at 5 Fisher Street, Franklin, Massachusetts, 02038. Lafayette, a wholly owned subsidiary of CCM Automotive LLC, has its principal place of business at 1465 Shattuck Industrial Boulevard, Lafayette, Georgia 30728.

support of the Application, the Debtors rely on the *Declaration of James T. McDermott in Support of Chapter 11 Petitions and First Day Pleadings* (the "First Day Declaration"), and respectfully represent and set forth as follows:

## Jurisdiction and Venue

1.      The United States Bankruptcy Court for the District of Massachusetts (the "Court") has jurisdiction over this Application pursuant to 28 U.S.C. §§ 157 and 1334.  This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2), and the Court may enter a final order consistent with Article III of the United States Constitution.  Venue is proper in this District pursuant to 28 U.S.C. §§ 1408 and 1409.

2.      The statutory predicates for the relief sought herein are sections 327(a) and 328(a) of the Bankruptcy Code, Rules 2014(a) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Local Rule 2014-1 of the Court (the "Local Rules").

## General Background

3.      On the date hereof (the "Petition Date"), the Debtors commenced the above-captioned chapter 11 cases (the "Chapter 11 Cases") by each filing a voluntary petition for relief under chapter 11 of the Bankruptcy Code with the Court.

4.      The Debtors continue to operate their business as debtors-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  As of the date of this Motion, no trustee, examiner, or statutory committee has been appointed in the Chapter 11 Cases.

5.      A detailed description of the Debtors and their businesses, and the facts and circumstances supporting this Motion, are set forth in greater detail in the First Day Declaration, filed contemporaneously herewith and incorporated herein by reference.

6.      As discussed in the First Day Declaration, the Debtors have been in operation for over one hundred years.  The Debtors' business consists of the manufacture and supply of

innovative, high-quality acoustic insulation and interior trim products primarily for use by automotive industry.  In addition, the Debtors produce non-woven textile products for the automotive, transportation, industrial, and textile sectors, such as moving pads, grease and oil absorption mats, and other padding.  The Debtors manufacture and house their inventory in two plants, one in Lafayette, Louisiana, and the other in Franklin, Massachusetts.

7.      The Debtors' largest customer by volume is General Motors LLC ("GM"), accounting for over 80% of the Debtors' revenues.  The Debtors have been in business with GM for nearly 50 years.  Currently, the bulk of the Debtors' production involves manufacturing a variety of parts, including floor and dash insulators, for GM's automobiles.

8.      The Debtors' supply relationship with GM is memorialized in a series of Purchase Order Contracts, which are supplemented by GM's General Terms and Conditions and other agreements (collectively, the "GM Contracts").  The GM Contracts require CCM to manufacture products on a fixed price requirements basis.  In other words, the GM Contracts require CCM to produce all of GM's requirements for each component or part covered by the agreement at a fixed cost.  Under the GM Contracts, CCM is obligated to give GM annual price reductions over the term of the agreement.  The GM Contracts also obligate CCM to produce all of GM's requirements for each component or part.

9.      For nearly 50 years, the Debtors have had a very positive relationship with GM. In fact, CCM received the prestigious "Supplier of the Year" award from GM four times in the last seven years (i.e., 2009, 2010, 2012, and 2015).  The "Supplier of the Year" award is a very selective honor bestowed upon less than 1% of GM's suppliers worldwide (i.e., approximately 70 out of more than 20,000).  In 2012, CCM was also one of only four companies globally to receive GM's "Overdrive" award, which recognizes suppliers that have gone above and beyond

3

in meeting GM's exacting business demands and by demonstrating commitment to their communities.

10.     At GM's encouragement, the Debtors expanded their operations between 2012 and 2015, opening new facilities in Lafayette, Georgia and establishing a joint venture in Irapuato, Mexico.  The purpose of the expansion was to locate new manufacturing facilities closer to GM's North American Assembly Plants, thereby reducing GM's inbound transportation costs.  GM responded to CCM's efforts by awarding CCM, Lafayette, and the Mexican joint venture contracts to produce additional parts.  Unfortunately, the price targets provided by GM for numerous parts are significantly below market prices and even below CCM's manufacturing cost.  As the Debtors produced greater quantities of parts for GM, they incurred greater operating losses.  Since 2013, the Debtors have incurred significant losses totaling more than $12 million on the GM Contracts.  Presently, the Debtors are losing approximately $30,000 per day producing parts under the GM Contracts.

11.     In early 2016, the Debtors engaged the services of KPMG LLP ("KPMG") and Conway MacKenzie to assist them in assessing their business and options with GM.

12.     In March of 2016, the Debtors requested price concessions from GM on their money-losing parts.  CCM explained to GM that without an increase in pricing for its parts, CCM would soon run out of money.  On or about April 1, 2016, CCM and GM entered into an Interim Accommodation Agreement, whereby the parties made various mutual commitments for an initial thirty (30) day period during which time they agreed to negotiate in good faith toward new pricing for certain money-losing parts.  Thereafter, the term of the Interim Accommodation Agreement was extended to June 17, 2016 while the parties continued to negotiate toward a

permanent solution.   Unfortunately, CCM and GM have been unable to structure any updated agreement that would offer improved and more sustainable pricing for CCM.

13.     As of the Petition date, CCM has borrowed more than $3.5 million from GM (together with one-time price increases, a total of more than $7.0 million had been advanced by GM under the Interim Accommodation Agreement) to sustain its money-losing operations. Ultimately, GM was unwilling or unable to make price concessions or to otherwise support a sale process that would accomplish anything for anyone other than itself.

14.     The Debtors are currently in the process of formulating a comprehensive strategy for their estates, which involves shutting down operations, relieving themselves of the burdensome, money-losing GM contracts, and selling substantially all of their assets, thereby maximizing the value of those assets for the benefit of the estate.

15.     The Debtors have concluded that their assets will be significantly more valuable once the burden of the GM Contracts is lifted.   Subject to this Court's approval of the Debtors' decision to reject the GM Contracts, and absent a new agreement with GM, the Debtors will cease operations.   Thereafter, the Debtors will pursue a "turn-key" sale of their assets, wherein they will sell substantially all of their assets under a court-approved auction process.   The Debtors' affiliates, CCMcD Real Estate Lafayette LLC and CCMcD Real Estate LLC, will thereafter make the Debtors' Franklin and Lafayette facilities available for lease to the winning bidder (at fair market rates).   This process will maximize the value of the Debtors' assets both by relieving the Debtors of the burdensome GM Contracts and avoiding a piecemeal liquidation.

16.     In connection with their strategy for achieving a turn-key sale, the Debtors seek to employ Conway MacKenzie to market their assets.

## Relief Requested

17.     By this Application, the Debtors seek the entry of an order, substantially in the form attached hereto, which (a) authorizes the employment and retention of Conway MacKenzie as investment banker to the Debtors, *nunc pro tunt* to the Petition Date; and (b) approves the terms and conditions contained in that certain engagement letter among the Debtors and Conway MacKenzie, dated April 14, 2016 (the "Engagement Letter"), under which Conway MacKenzie will be retained and compensated at the expense of the Debtors' estates, a copy of which is attached hereto at **Exhibit B**.

## Conway MacKenzie's Qualifications

18.     Conway MacKenzie is a full-service international investment banking firm with expertise across a wide range of industries, products, and services in investment banking and financial restructuring.  It is a well-regarded advisor for debtors and debtors-in-possession during financial restructurings.  Founded in 1987, it has grown to ten offices worldwide located in Atlanta, Chicago, Dallas, Dayton, Detroit, Houston, Los Angeles, New York, London, and Bucharest.

19.     After conducting interviews with three firms, the Debtors selected Conway MacKenzie because its professionals have extensive experience working with financially distressed companies, particularly in the auto-parts industry, both in and out of chapter 11 bankruptcy.  Representative clients that investment bankers at Conway MacKenzie have advised in prior Chapter 11 engagements include American Eagle Energy, Lee Steel Corporation, Houston Regional Sports Network, and Groeb Farms.

20.     Conway MacKenzie and its professionals are providing or have provided financial advisory, investment banking, and other services for debtors and other parties in a number of

bankruptcy cases.   See, e.g., In re Lewiston, (Bankr. E.D. Mich. No. 12-58599); In re SII Liquidation Co., (Bankr. N.D. Ohio No. 10-60702).

21.     As set forth in the First Day Declaration, Conway MacKenzie was engaged prior to the Petition Date to provide investment banking services to the Debtors.  As a result of its pre-petition relationship with the Debtors, Conway MacKenzie is familiar with the Debtors' corporate structure, capital structure, management, operations, and various other aspects of their businesses.  As a result, the Debtors believe that Conway MacKenzie is well qualified to perform these services and to effectively represent their interests in the Chapter 11 Cases.

## Scope of Services

22.     The parties have entered into the Engagement Letter, which governs the relationship between the Debtors and Conway MacKenzie.  The terms and conditions of the Engagement Letter were negotiated at arm's length and reflect the parties' mutual agreement as to the scope of this engagement.  Under the Engagement Letter, Conway MacKenzie will provide such investment services as it and the Debtors deem appropriate in connection with effectuating a Disposition,[2] including but not limited to:

> (a)     identifying prospective buyers for a Disposition;
>
> (b)     assisting the Debtors in evaluating indications of interest or letters of intent from prospective buyers and coordinating due diligence materials to be made available to prospective buyers;
>
> (c)     participating in site visits and management meetings with potential buyers;
>
> (d)     assisting the Debtors with the negotiation of documents related to a potential Disposition; and
>
> (e)     advising the Debtors regarding the form, structure, consideration, and substance of a potential Disposition.

---

[2] This term is defined on Schedule II of the Engagement Letter, attached hereto at Exhibit B, and includes transactions such as a sale, merger, or other transfers of ownership.

23.     It is necessary that the Debtors employ Conway MacKenzie to render the foregoing services.  The Debtors believe that Conway MacKenzie's work will not duplicate the services that other professionals will be providing to Debtors in the Chapter 11 Cases.  Specifically, Conway MacKenzie will carry out a unique function relating to a potential Disposition and will use reasonable efforts to coordinate with the Debtors and other retained professionals to avoid unnecessary duplication of services.

### **Compensation**[3]

24.     Subject to the Court's approval and as set forth with greater specificity in the Engagement Letter, the Debtors and Conway MacKenzie have agreed to the following compensation and expense structure (the "Compensation Structure"):

(a)     Upfront Fee.  A nonrefundable fee equal to $40,000.00 to be paid at the commencement of the engagement.

(b)     Monthly Fees.  A nonrefundable fee equal to $40,000.00, to be paid every month after the commencement of the engagement.  The engagement has a minimum duration of three (3) months.  Should the engagement extend beyond three (3) months, payment of additional monthly fees shall continue.

(c)     Disposition Fee.  In the event of a Disposition (as that term is defined in the Engagement Letter), the Disposition Fee is calculated as follows.  If the Enterprise Value (as that term is defined in the Engagement Letter) is less than or equal to $10,000,000.00, the Disposition Fee will equal 4.5% of the Enterprise Value.  If the Enterprise Value is greater than $10,000,000.00, the Disposition Fee will equal $450,000.00, plus 7.5% of the amount of the Enterprise Value which exceeds $10,000,000.00.  The Upfront Fee and the Monthly Fees shall be credited against the Disposition Fee.  Nevertheless, the minimum Disposition Fee shall be $450,000 inclusive of the Upfront Fee.  The Disposition Fee is due upon closing of the Disposition and is a condition precedent to the closing.

---

[3]  The description of Conway MacKenzie's compensation set forth herein is for summary purposes only.  In the event of a conflict between the description of the terms of the Engagement Letter set forth herein, and the actual terms of the Engagement Letter, the actual terms will control.

        (d)    <u>Costs</u>.  Conway MacKenzie is entitled to reimbursement of all reasonable and reasonably documented out-of-pocket expenses incurred in connection with services provided in the engagement.

25.     As set forth in the First Day Declaration, the Compensation Structure described in the Engagement Letter is comparable to those generally charged by investment banking firms of similar stature to Conway MacKenzie for comparable engagements, both in and out of court.  It is also consistent with Conway MacKenzie's normal and customary billing practices for cases of this size and complexity that require the level and scope of services outlined.  The Debtors also believe that the Compensation Structure is both reasonable and at favorable market rates.

26.     Conway MacKenzie's general restructuring expertise and experience, its knowledge of capital markets, its contacts with potential buyers, and its other capabilities will inure to the benefit of the Debtors and, accordingly, the Compensation Structure is reasonable regardless of the number of hours to be expended by Conway MacKenzie professionals in the performance of the services to be provided under the Engagement Letter.  Nonetheless, the Compensation Structure takes into consideration Conway MacKenzie's anticipation that it will need to continue to provide a substantial commitment of professional time and effort to perform its duties under the Engagement Letter.

27.     In addition, given the numerous issues that Conway MacKenzie may be required to address in performance of the services hereunder, its commitment to the variable level of time and effort necessary to address all such issues as they arise, and the market prices for its services for engagements of this nature in an out-of-court context, the Debtors believe that the Compensation Structure set forth in the Engagement Letter is reasonable under the standards set forth in section 328(a) of the Bankruptcy Code.

28.     As set forth in the Engagement Letter, Conway MacKenzie will file with the Court a final fee application for allowance of its compensation and reimbursement of its expenses with respect to services rendered in accordance with applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, and the guidelines for compensation and reimbursement of expenses established by the U.S. Trustee (the "UST Guidelines"). Consistent with its ordinary practice and the practice of investment bankers in other chapter 11 cases whose fee arrangements are not hours-based, Conway MacKenzie does not maintain contemporaneous time records or provide or conform to a schedule of hourly rates for its professionals.  Moreover, it is not Conway MacKenzie's practice to keep detailed time records on a "project category" basis.  Accordingly, the Debtors request that notwithstanding anything to the contrary in the Bankruptcy Code, the Bankruptcy Rules, the UST Guidelines, or Local Rule 2016-1, Conway MacKenzie professionals be required only to keep time records in one-half hour increments and not be required to keep time records on a project category basis.

29.     Conway MacKenzie has not shared or agreed to share any compensation to be paid by the Debtors with any other person, other than other principals and employees of Conway MacKenzie, in accordance with section 504 of the Bankruptcy Code.

### **Indemnification**

30.     As set forth more fully herein, and pursuant to the terms set forth within Schedule I to the Engagement Letter, which can be found at Exhibit B (the "Indemnification Agreement"), the Debtors have agreed to indemnify Conway MacKenzie and its affiliates and each of their respective officers, directors, partners, employees, agents, and controlling persons.  The Debtors will not be responsible for indemnifying Conway MacKenzie to the extent such liability is found in a final judgment by a court of competent jurisdiction to have resulted primarily from Conway

MacKenzie's gross negligence or willful misconduct in the performance of its duties under the Engagement Letter.

31.     The Indemnification Agreement contains standard indemnification terms, both in chapter 11 cases and outside chapter 11, and reflects the qualifications and limits on such terms that are customary for Conway MacKenzie and other similar investment bankers.  See, e.g., In re United Artists Theatre Co., 315 F.3d 217, 228-34 (3d Cir. 2003).  The Indemnification Agreement was fully negotiated between the Debtors and Conway MacKenzie at arm's length and the Debtors respectfully submit that the Indemnification Agreement is reasonable. Accordingly, as part of this Application, the Debtors request that this Court approve the Indemnification Agreement.

32.     In conclusion, the Debtors believe that the compensation and indemnity provisions in the Engagement Letter for Conway MacKenzie, as advisor, are reasonable and should be approved by the Court under section 328(a) of the Bankruptcy Code.  See, e.g., In re Trans Nat'l Commc'ns Int'l, Inc., 462 B.R. 339, 347 (Bankr. D. Mass. 2011).

### Conway MacKenzie's Disinterestedness

33.     To the best of the Debtors' knowledge, information and belief, and based on the accompanying MacKenzie Declaration: (a) Conway MacKenzie is a "disinterested person" within the meaning of section 101(14) of the Bankruptcy Code and as required by section 327(a) of the Bankruptcy Code, and holds no interest materially adverse to the Debtors, their creditors, or shareholders for the matters for which Conway MacKenzie is to be employed; and (b) Conway MacKenzie has no connection to the Debtors, their creditors, shareholders, related parties, the U.S. Trustee, or any person employed in the Office of the U.S. Trustee, except as disclosed in the MacKenzie Declaration.

11

34.     Furthermore, to the best of the Debtors' knowledge, information, and belief, and based on the MacKenzie Declaration, none of Conway MacKenzie's past or current engagements would or do appear to create an interest materially adverse to the interests of the Debtors, creditors, or equity security holders in the Chapter 11 Cases.  As such, the Debtors believe that Conway MacKenzie is disinterested and holds no materially adverse interest as to the matters upon which they are to be retained.  To the extent that Conway MacKenzie discovers any facts bearing on the matters described herein during the period of its retention, it will promptly supplement the information contained in the MacKenzie Declaration.

35.     Additionally, during the ninety (90) days prior to the Petition Date, Conway MacKenzie received from the Debtors $123,696.11 on account of pre-petition services.  The Debtors do not owe Conway MacKenzie any amount for services performed or expenses incurred prior to the Petition Date.  Accordingly, Conway MacKenzie is not a prepetition creditor of the Debtors.

**Basis For Relief**

36.     Under section 327 of the Bankruptcy Code, a debtor-in-possession may employ one or more professionals who do not hold or represent an interest adverse to the estate and that are disinterested persons to assist the debtor in possession in carrying out its duties under the Bankruptcy Code.

37.     Section 328 of the Bankruptcy Code further provides, in pertinent part, that under section 327 of the Bankruptcy Code, a professional may be employed "on any reasonable terms and conditions of employment, including on a retainer, on an hourly basis, on a fixed or percentage fee basis, or on a contingent fee basis."  See 11 U.S.C. § 328(a).

12

38.    Bankruptcy Rule 2014(a) sets forth the requirements for retention applications and provides that such applications must include "specific facts showing the necessity for the employment, the name of the [company] to be employed, the reasons for the selection, the professional services to be rendered, any proposed arrangement for compensation, and, to the best of the applicant's knowledge, all of the [company's] connections with the debtor, creditors, any other party in interest, their respective attorneys and accountants, the United States trustee, or any person employed in the office of the United States trustee."

39.    By this Application, the Debtors request that the Court approve the engagement and compensation arrangements described in the Engagement Letter pursuant to section 328(a) of the Bankruptcy Code.  The engagement arrangements contained in the Engagement Letter are beneficial to the Debtors' estates and the compensation arrangements provide certainty and proper inducement for Conway MacKenzie to act expeditiously and prudently with respect to the matters for which it will be employed.

40.    The Debtors further request approval of the employment of Conway MacKenzie *nunc pro tunc* to the Petition Date.  Such relief is warranted by the circumstances presented by these Chapter 11 Cases.  See In re Jarvis, 53 F.3d 416, 422 (1st Cir. 1995).  The United States Court of Appeals for the Third Circuit has identified "time pressure to begin service" and absence of prejudice as factors favoring *nunc pro tunc* retention.  See In re Ark. Co., 798 F.2d 645, 650 (3d Cir. 1986).  In addition, Local Rule 2014-1(d) provides that if an application to employ is filed within fourteen (14) days from the later of case commencement or the date that the professional commenced rendering services, court approval shall be deemed effective commencing the date that services were first rendered.  See MLBR 2014-1(d).

41.     In this case, the Debtors anticipate that they will cease business operations shortly after the petition date, and seek approval to auction substantially all their assets soon thereafter. The sooner that a sale can be approved, the sooner that the Debtors' employees can return to work under the new owner of the Debtors' business.   Accordingly, the speed that has characterized these Chapter 11 Cases have necessitated that the Debtors, Conway MacKenzie, and the Debtors' other professionals focus their immediate attention on time-sensitive matters and promptly devote substantial resources to the affairs of the Debtors pending submission and approval of this Application.

42.     The Debtors engaged Conway MacKenzie as their investment banker to assist the Debtors with several potential Dispositions.  As defined in the Engagement Letter, a Disposition means and includes any transaction or series of related transactions involving the transfer of control of the Debtors or any material part of its assets, including a merger, consolidation, reorganization, recapitalization, or sale.  The Debtors submit that a Disposition is the best way to maximize the value of the Debtors' estates.

43.     The resources, capabilities, and experience of Conway MacKenzie in advising the Debtors are crucial to the Debtors during these Chapter 11 Cases.   Conway MacKenzie's experience as an investment banker will complement the services offered by the Debtors' other restructuring professionals.  Conway MacKenzie will concentrate its efforts on, among other things, assisting and advising the Debtors with respect to a Disposition, negotiating with interested potential buyers, and assisting the Debtors to successfully maximize recoveries.

## Notice

44.     The Debtors have provided notice of this Application to: (a) the Office of the United States Trustee for the District of Massachusetts; (b) counsel to Wells Fargo; (c) counsel

14

to GM; (d) the creditors holding the twenty (20) largest claims against the Debtors' estates; (e) counsel to the United States Department of Environmental Protection; (f) counsel to the Pension Benefit Guaranty Corporation; (g) the Internal Revenue Service and all other known taxing authorities; (h) the United States Department of Justice; (i) any party which has filed, prior to the date of filing this Motion, a request for service of pleadings in this case; and (j) counsel for any official committee of unsecured creditors appointed in this case pursuant to section 1102 of the Bankruptcy Code.   In light of the nature of the relief requested in this Motion, the Debtors respectfully submit that no further notice is necessary.

### No Prior Request

45.    No prior motion for the relief requested herein has been filed in this or any other court.

*[remainder of page intentionally left blank]*

**Conclusion**

WHEREFORE, for the reasons set forth in the First Day Declaration and the MacKenzie Declaration, the Debtors respectfully request that the Court enter an Order, substantially in the form attached hereto: (1) authorizing the Debtors to retain and employ Conway MacKenzie as investment banker to the Debtors, *nunc pro tunc* to the Petition Date; (2) approving the terms and conditions contained in the Engagement Agreement; and (3) granting such other relief as is just and proper.

Dated: Boston, Massachusetts
   July 7, 2016

Respectfully submitted,

CLARK-CUTLER-MCDERMOTT COMPANY
and CCM AUTOMOTIVE LAFAYETTE LLC,

By their proposed counsel,


*/s/ David A. Mawhinney*
Charles A. Dale III (BBO No. 558839)
Mackenzie L. Shea (BBO No. 666241)
David A. Mawhinney (BBO No. 681737)
K&L Gates LLP
State Street Financial Center
One Lincoln Street
Boston, Massachusetts 02111
Tel: (617) 261-3100
Fax: (617) 261-3175

E-mail:
   chad.dale@klgates.com
   mackenzie.shea@klgates.com
   david.mawhinney@klgates.com