UNITED STATES BANKRUPTCY COURT
DISTRICT OF MASSACHUSETTS
CENTRAL DIVISION

| | |
|---|---|
| **In re** | **Chapter 11** |
| **CLARK-CUTLER-MCDERMOTT COMPANY,** *et al.*,[1] | **Case No. 16-41188** |
| | **(Jointly Administered)** |
| **Debtors.** | |

### INTERIM ORDER (A) AUTHORIZING USE OF CASH COLLATERAL; (B) GRANTING ADEQUATE PROTECTION; (C) SCHEDULING A FINAL HEARING PURSUANT TO BANKRUPTCY RULE 4001; AND (D) GRANTING RELATED RELIEF

This matter having come before the Court on the *Motion of the Debtors for Interim and Final Orders (A) Authorizing Use of Cash Collateral; (B) Granting Adequate Protection; (C) Scheduling a Final Hearing Pursuant to Bankruptcy Rule 4001; and (D) Granting Related Relief* (the "Motion")[2] filed by Clark-Cutler-McDermott Company ("CCM") together with its affiliate CCM Automotive Lafayette LLC ("Lafayette" and, together with CCM, the "Debtors"); and the Court having jurisdiction to consider the Motion and the relief requested therein in accordance with 28 U.S.C. §§ 157 and 1334; and notice of the Motion and the hearing being good and sufficient notice under the circumstances; and it appearing from the record before the Court that sufficient cause exists for the entry of this order; the Court **FINDS AS FOLLOWS**:

---

[1] The Debtors in these chapter 11 cases are Clark-Cutler-McDermott Company and CCM Automotive Lafayette LLC. CCM's corporate headquarters are located at 5 Fisher Street, Franklin, Massachusetts, 02038. Lafayette, a wholly owned subsidiary of CCM Automotive LLC, has its principal place of business at 1465 Shattuck Industrial Boulevard, Lafayette, Georgia 30728.

[2] Capitalized terms not defined herein that have the meanings ascribed to them in the Motion.

BOS-4148049 v12

A. On July 7, 2016 (the "Petition Date"), the Debtors filed voluntary petitions for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the District of Massachusetts (the "Court").

B. The Debtors continue to operate their business as debtors in possession pursuant to Sections 1107 and 1108 of the Bankruptcy Code. No official committee of unsecured creditors has been appointed in these cases.

C. This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).

D. The Debtors [assert that they] require the use of the cash collateral in order to [avoid immediate and irreparable harm and to] preserve the value of their business and assets. The entry of the relief contained in this Order is in the best interests of the Debtors, their estates, and their creditors. → [No party in interest has refuted that assertion.]

E. Wells Fargo Bank, NA ("Wells Fargo") has asserted a first priority lien against the Debtors' assets and the cash proceeds thereof (the "Cash Collateral").

F. General Motors LLC ("GM" and together with Wells Fargo, the "Lenders") has asserted a second priority lien against the Debtors' assets and the Cash Collateral.

G. This Court has not been asked to find, and it does not find, that any security interest asserted by the Lenders is valid or perfected. Nothing in this order constitutes a limitation on the applicability of Massachusetts Local Bankruptcy Rule 4001-2(c).

H. Pending a final hearing on the Motion, the replacement liens and other forms of protection set forth below will adequately protect the interests of the Lenders.

I. Due and adequate notice of the hearing has been given, and no further notice of the hearing is required before the entry of the relief provided for in this Order.

J. Absent the use of Cash Collateral, immediate and irreparable harm will result to the Debtors, their estates, and their creditors. The Debtors do not have sufficient available

2

BOS-4148049 v12

sources of working capital, absent use of Cash Collateral, to complete a sale of their assets or to maximize value for their estates and all parties-in-interest without the relief requested under the Motion. Accordingly, the Debtors have an immediate need for the use of Cash Collateral to, among other things, permit the orderly and efficient preservation and disposition of their assets in order to maximize the recovery for all stakeholders.

**NOW THEREFORE, IT IS HEREBY ORDERED THAT:**

1. The Motion is allowed, on an interim basis, as set forth herein.

2. The Debtors are authorized to use Cash Collateral in the ordinary course of their business substantially in accordance with the budget attached hereto as Exhibit 1 (the "Budget") for the period (the "Specified Period") from the Petition Date through the date which is the earliest to occur of: (a) an Event of Default (subject to the Debtors' right to obtain further authorization to use Cash Collateral within the Notice Period) or (b) the conclusion of the final hearing on the Motion.

3. The Debtors shall use Cash Collateral during the Specified Period, at the times, in the amounts, and solely for the purposes identified in the Budget (as such may be amended with the consent of Wells Fargo or approval of the Court), provided, however, the Debtors shall be authorized to exceed the expenses in the Budget by no more than ten percent (10%) (on an aggregate basis) (the "Permitted Variance") and to apply any unused portion in one week to any subsequent weekly period.

4. **Adequate Protection Liens**

    (a) *Senior Adequate Protection Liens.* As adequate protection for any post-petition diminution in value resulting from the Debtors' use of Cash Collateral, Wells Fargo is hereby granted additional and replacement continuing valid, binding, enforceable, non-avoidable, and automatically perfected post-petition security interests in and liens (the "Senior

3

Adequate Protection Liens") in and to all property of the kind presently securing the prepetition obligations of the Debtors to Wells Fargo, including property purchased or acquired with the Cash Collateral, together with any proceeds thereof, but excluding causes of action under chapter 5 of the Bankruptcy Code (collectively, the "Senior Collateral"). The Senior Adequate Protection Liens shall only attach to and be enforceable against the same types of property, to the same extent, as existed immediately prior to the Petition Date, and shall have the priority set forth in paragraph 4(c) below. Notwithstanding the foregoing, the Senior Adequate Protection Liens shall be recognized only to the extent of any post-petition diminution in value of the prepetition collateral of Wells Fargo resulting from the Debtors' use of Cash Collateral during the bankruptcy case.

(b)     ***Junior Adequate Protection Liens***. As adequate protection for any post-petition diminution in value resulting from the Debtors' use of Cash Collateral, GM is hereby granted additional and replacement continuing valid, binding, enforceable, non-avoidable, and automatically perfected post-petition security interests in and liens (the "Junior Adequate Protection Liens") in and to all property of the kind presently securing the prepetition obligations of the Debtors to GM, including property purchased or acquired with the Cash Collateral, together with any proceeds thereof, but excluding causes of action under chapter 5 of the Bankruptcy Code (collectively, the "Junior Collateral"). The Junior Adequate Protection Liens shall only attach to and be enforceable against the same types of property, to the same extent, as existed immediately prior to the Petition Date, and shall have the priority set forth in paragraph 4(c) below. Notwithstanding the foregoing, the Junior Adequate Protection Liens shall be recognized only to the extent of any post-petition diminution in value of the prepetition collateral of GM resulting from the Debtors' use of Cash Collateral during the bankruptcy case.

BOS-4148049 v12

    *(c)    Priority of Adequate Protection Liens*

        (i)    The Senior Adequate Protection Liens shall be senior to all other security interests in, liens on, or claims against any of the Senior Collateral.

        (ii)    The Junior Adequate Protection Liens shall be junior to the Senior Adequate Protection Liens, but otherwise shall be senior to all other security interests in, liens on, or claims against any of the Junior Collateral.

        (iii)    The Adequate Protection Liens shall be enforceable against and binding upon the Debtors, their estates and any successor thereto, including, without limitation, any trustee or other estate representative appointed in the case, or any case under chapter 7 of the Bankruptcy Code upon the conversion of the case, or in any other proceedings superseding or related to any of the foregoing.

5.    Nothing in this Interim Order is meant to or shall be deemed to alter or otherwise modify the rights of Wells Fargo and GM as set forth in any intercreditor agreement between them.

6.    The Adequate Protection Liens shall not attach to any avoidance powers held by the Debtors or any trustee for the Debtors, including those avoidance powers set forth in sections 544, 545, 547, 548, 549, 550, 551 and 553 of the Bankruptcy Code, or to the proceeds of any claims under or actions commenced pursuant to such powers.

7.    This Interim Order shall be sufficient and conclusive evidence of the validity, perfection, and priority of the Adequate Protection Liens without the necessity of filing or recording any financing statement or other instrument or document which may otherwise be required under the law or regulation of any jurisdiction or the taking of any other action (including, for the avoidance of doubt, entering into any deposit account control agreement)

BOS-4148049 v12

to validate or perfect (in accordance with applicable non-bankruptcy law) the Adequate Protection Liens or to entitle the Lenders to the priorities granted herein.

8. As further adequate protection for the Debtors' use of Cash Collateral, the Debtors shall pay Wells Fargo $66,276.00 in regularly scheduled principal and interest on account of the Term Loan (the "Monthly Payment") on or before the 1st day of each month.

9. On or before the Wednesday of each week following entry of this Order, the Debtors shall furnish to the Lenders and their counsel (and any official committee of unsecured creditors appointed in this bankruptcy case and its counsel) a weekly cash report setting forth, in comparative form, the actual results achieved against those projected for the prior week, including the actual cash receipts and disbursements and the variance of the actual results from those estimated in the Budget.

10. The Debtors' authority to use Cash Collateral as provided for in this Order shall terminate upon the occurrence of any of the following events, unless waived by Wells Fargo in writing (collectively, the "Events of Default"):

(a) the failure by the Debtors to perform, in any material respect, any of the terms, provisions, conditions, covenants, or obligations under this Order if such default remains uncured for three (3) days following written notice from the Lenders;

(b) reversal, vacatur, or modification (without the express prior written consent of the Lenders, each in its sole discretion) of this Order, other than in accordance with the final order approving the Motion; or

(c) dismissal of the case or conversion of these chapter 11 cases to a chapter 7 case, or appointment of a chapter 11 trustee, examiner with enlarged powers, or other responsible person.

11. Wells Fargo shall provide the Debtors ~~and~~ GM and any official committee appointed in these Chapter 11 Cases and each of their counsel with notice of an Event of Default in writing and simultaneously serve same on the Office of the United States Trustee. Upon receiving notice of an Event of Default, the Debtors' authority to

6

BOS-4148049 v12

use Cash Collateral shall cease if the Debtors does not within five (5) days thereof (the "Notice Period") seek an emergency hearing with the Court and obtain the further use of Cash Collateral.

12. Nothing in this Order shall constitute a waiver by or restrict the Debtors' right to seek the further use of Cash Collateral.

13. This Order and the Debtors' use of Cash Collateral as authorized in this Order shall become effective immediately upon entry of this Order by the Court.

14. The Debtors are authorized, but not directed, to maintain and use their existing bank account at Wells Fargo in the name and with the account number, CCM Operating Account (Clark Cutler McDermott) xxxxxx6412 (the "Wells Account") as existed immediately prior to the Petition Date [insert: (a) processing the Debtors' June 14th payroll and (b) notifying third-party payors of the Debtors' newly established "debtor-in-possession" accounts at Rockland Trust. Immediately after completion of (a) and (b) of the foregoing sentence, and in any event no later than 7 days from date of this Order, the Debtors shall close the Wells Account].

15. Wells Fargo is authorized to debit the Wells Account in the ordinary course of business without the need for further order of the Court for: (i) all checks drawn on such account which ~~are~~ [have been] cashed at Wells Fargo's counters or exchanged for cashier's checks by the payees thereof prior to the Petition Date; (ii) ~~all checks or other items deposited in such account prior to the Petition Date which have been dishonored or returned unpaid for any reason, together with any fees and costs in connection therewith, to the same extent the Debtor was responsible for such items prior to the Petition Date; and~~ (iii) all undisputed prepetition amounts outstanding as of the date hereof, if any, owed to Wells Fargo for service charges for the maintenance of such account. [insert: The closing of the Wells Account and the transfer of cash, if any, pursuant to the foregoing sentence shall not affect any rights of the Lenders related to such account and such cash that existed on the Petition Date and any such rights shall continue to attach to the cash in the new accounts in the same priority.]

16. Wells Fargo may rely on the representations of the Debtors with respect to whether any check or other payment order drawn or issued by the Debtors prior to the Petition Date should be honored pursuant to this or any other order of this Court, and Wells Fargo shall

not have any liability to any party for relying on such representations by the Debtors as provided for herein.

17. Any existing deposit account control agreements between the Debtors and Wells Fargo related to the Wells Account shall continue to govern the post-petition relationship between the Debtors and Wells Fargo, and that all of the provisions of such agreements, including, without limitation, the termination and fee provisions, shall remain in full force and effect. Either the Debtors or Wells Fargo may, without further order of this Court, implement changes to the cash management systems and procedures, if any, in the ordinary course of business pursuant to the terms of those agreements.

18. ~~Nothing in~~ Paragraphs 14- 17 of this Order ~~is~~ apply to the Wells Account ~~shall be construed to confer upon GM any greater or further rights than it had in its capacity solely~~ as the holder of a second priority lien against the Debtors' assets and the Cash Collateral as of the Petition Date. *and the rights of Wells Fargo regarding the Wells Account, and shall not affect GM's rights*

19. A final hearing on the Debtors' Motion shall be held on _August 2_, 2016 at _10:00_ a.m. Any opposition should be filed on or before July 29, 2016. Any proposed budget or amended orders should be filed by the Debtors on or before July 26, 2016.

20. A copy of this Order, shall be served by the Debtors via first class mail on or before _July 15, 2016_ upon: (a) the Office of the United States Trustee for the District of Massachusetts; (b) counsel to Wells Fargo; (c) counsel to GM (d) the creditors holding the twenty (20) largest claims against the Debtors' estates; (e) counsel to the United States Department of Environmental Protection; (f) counsel to the Pension Benefit Guaranty Corporation; (g) the Internal Revenue Service and all other known taxing authorities (h) the United States Department of Justice; (i) any party which has filed, prior to the date of filing this Motion, a request for service of pleadings in this case; and (j) counsel for any official committee

8

BOS-4148049 v12

of unsecured creditors appointed in this case pursuant to section 1102 of the Bankruptcy Code. Service in accordance with this paragraph shall be deemed good and sufficient notice and service of this Order and of the final hearing on the use of Cash Collateral.

21. The Court has and will retain jurisdiction to enforce this Interim Order according to its terms.

Dated: 7/13, 2016

Hon. Christopher J. Panos
United States Bankruptcy Judge

# EXHIBIT 1

# BUDGET

.

**Clark-Cutler-McDermott Company**  
**CCM Automotive Lafayette LLC**  
**Cash Budget**  
Submitted to Court 7/13/2016                                     ($ Omitted)

| | W/E 8-Jul-16 | W/E 15-Jul-16 | W/E 22-Jul-16 | W/E 29-Jul-16 |
|---|---|---|---|---|
| Cash Balance | $ 1,949,974.74 | $ 1,744,738.88 | $ 1,477,529.16 | $ 1,457,529.16 |
| AR - Collections | $ 2,643.20 | $ 100,000.00 | $ 100,000.00 | $ 100,000.00 |
| Total Cash Available | $ 1,952,617.94 | $ 1,844,738.88 | $ 1,577,529.16 | $ 1,557,529.16 |
| **Disbursements:** | | | | |
| Payroll Franklin | $ 65,126.10 | $ 230,000.00 | $ 50,000.00 | $ 50,000.00 |
| Payroll Georgia | | 30,000.00 | 5,000.00 | 5,000.00 |
| Franklin 401-K | | 6,282.29 | | |
| Georgia 401-K | | 933.37 | | |
| Temporary Workers CCMcD Franklin - Alpha | | 3,578.41 *7,685.67* | | |
| Temporary Workers CCMcD Franklin - HW Staffing | | 26,265.56 *74,328.71* | | |
| Temporary Workers - CCM Automotive Lafayette | | 5,150.09 | | |
| Town of Franklin Taxes | | | | - |
| Georgia Taxes | | | | - |
| BCBS / 401k / Benefits | | | | - |
| Rent | 37,013.00 | | | |
| Utilities | | 50,000.00 | 15,000.00 | 15,000.00 |
| Union Pension | 90,768.89 | | | |
| Union 401-(k) | 13,359.07 | | | |
| The Hartford - Insurance | | | 35,000.00 | - |
| MISC. (Trash, Repairs, Maint.) | 1,612.00 | 15,000.00 | 15,000.00 | 15,000.00 |
| Professional Fees | | | | |
| Total Disbursements | $ 207,879.06 | $ 367,209.72 | $ 120,000.00 | $ 85,000.00 |
| Ending Cash / Availability | $ 1,744,738.88 | $ 1,477,529.16 | $ 1,457,529.16 | $ 1,472,529.16 |
| | | | | $ 477,445.58 |