UNITED STATES BANKRUPTCY COURT
DISTRICT OF MASSACHUSETTS
EASTERN DIVISION

|   |   |
|---|---|
| In re | ) |
| | ) |
| | ) Chapter 11 |
| CLARK-CUTLER-MCDERMOTT | ) |
| COMPANY, *et al.*,[1] | ) Case No. 16-41188 (CJP) |
| | ) |
| Debtors. | ) (Jointly Administered) |
| | ) |

**GENERAL MOTORS LLC'S LIMITED OBJECTION
TO APPLICATION OF THE DEBTORS FOR ENTRY
OF AN ORDER PURSUANT TO 11 U.S.C. §§ 327(a) AND 328(a) OF THE
BANKRUPTCY CODE AUTHORIZING THE EMPLOYMENT AND RETENTION OF
CONWAY MACKENZIE CAPITAL ADVISORS LLC AS INVESTMENT
BANKER TO THE DEBTORS *NUNC PRO TUNC* TO THE PETITION DATE**

General Motors LLC ("GM"), for its limited objection (this "Objection") to the *Application of the Debtors for Entry of an Order Pursuant to 11 U.S.C. §§ 327(a) and 328(a) of the Bankruptcy Code Authorizing the Employment and Retention of Conway MacKenzie Capital Advisors LLC as Investment Banker to the Debtors* Nunc Pro Tunc *to the Petition Date* (the "Application") [Docket No. 15],[2] respectfully states as follows:

**Objection[3]**

A.   **The Liquidation of the Debtors' Assets Does Not Require an Investment Banker**

1.   As set forth in *General Motors LLC's Objection to Debtors' Motion for (I) Order Establishing Bidding Procedures and Granting Related Relief and (II) Order Approving Sale of*

---

[1] The Debtors in these chapter 11 cases are Clark-Cutler-McDermott Company and CCM Automotive Lafayette LLC. CCM's corporate headquarters are located at 5 Fisher Street, Franklin, Massachusetts, 02038. Lafayette, a wholly owned subsidiary of CCM Automotive LLC, has its principal place of business at 1465 Shattuck Industrial Boulevard, Lafayette, Georgia 30728.

[2] Capitalized terms used but not defined herein shall have the meaning ascribed to such terms in the Application.

[3] A detailed description of the facts and circumstances supporting this Objection can be found in *General Motors LLC's Motion for Relief from the Automatic Stay* [Docket No. 27] (the "GM Lift Stay Motion"), and are incorporated herein by reference.

22198873.5

*Substantially All Assets Free and Clear of All Liens, Claims, Encumbrances, and Interests and Granting Related Relief* (the "Bid Procedures Objection"), filed concurrently herewith, GM does not dispute that the Debtors' assets should be sold, and that such a sale should take place on an expedited basis. Nor, to the extent that the Court overrules GM's objection to the Debtors' use of cash collateral and determines that a sale of the Debtors' assets should proceed as part of chapter 11 cases, does GM oppose the engagement of a professional auctioneer or equipment liquidator to assist with that sale process. However, in light of the fact that a going concern sale of the Debtors' assets is no longer possible, the expense and expertise of an investment banker like Conway MacKenzie Capital Advisors LLC ("Conway") is not necessary to liquidate the Debtors' assets so as to maximize the net sales proceeds for the Debtors' estates.

      2.      To be clear, in April GM was supportive of Conway's engagement by the Debtors to assist the Debtors in navigating through what GM believed had the potential to be a *going concern sale* of the Debtors' businesses. In fact, pursuant to the Interim Accommodation Agreement between the parties, attached hereto as **Exhibit 1**, GM consented to the hiring of Conway as the Debtors' investment banker, and the parties agreed to certain related sale process milestones. However, despite those agreed upon milestones, upon information and belief the Debtors instructed Conway to stop all marketing efforts, and the Debtors shut their doors and ceased operations. In fact, CCM has previously told GM that Conway advised CCM to liquidate. In the letter informing GM of their first cessation of business operations, the Debtors told GM that: "with the benefit of financial and investment banking advice from two highly respected firms (KPMG and Conway Mackenzie), and after CCM's good faith yet unsuccessful negotiations with [counsel to GM] and [GM], *CCM's board of directors has concluded that the company should be liquidated.* At the close of business today, CCM will lay off its employees

and commence an orderly wind down." June 17, 2016 Letter from Charles A. Dale III to Joseph Sgroi (the "June 17 Letter"), attached hereto as **Exhibit 2** (emphasis added).

3.     Despite the Debtors' current characterization of the proposed asset sale as a "turn-key" sale, the sale is nothing more than the liquidation of the Debtors' assets contemplated in the June 17 Letter.  In other words, a forced liquidation.  To the extent Conway is willing to pursue such a sale with a similar fee structure as a traditional liquidator (who would also generally provide a minimum guaranteed purchase price for the assets), such an arrangement could be acceptable to GM.  However, absent such an arrangement, and given the likely sale price for the Debtors' assets, GM does not believe that the retention of Conway is warranted in light of, among other things, the proposed minimum Disposition Fee of $450,000, which is in addition to the payment of all of Conway's expenses (for which there has not been any estimate provided).

4.     GM also believes that no success fee should be paid to Conway if the ultimate purchase price for the assets does not exceed the assets' forced liquidation value.

B.     **Clarification is Necessary for Certain Portions of the Application**

5.     To the extent that the Court grants the Application and approves Conway's retention, certain aspects of the engagement should be clarified.  In particular, the Compensation Structure includes the Upfront Fee of $40,000, and Monthly Fees of $40,000, with a three month minimum.  In the MacKenzie Declaration, Mr. MacKenzie explains that Conway received from the Debtors $123,696.11 on account of pre-petition services in the ninety days prior to the Petition Date, MacKenzie Declaration at ¶10, so it appears that the Upfront Fee and two months of Monthly Fees have already been paid by the Debtors to Conway.  The Application, however, does not specify whether there will be an additional Upfront Fee and a reset of the three-month minimum engagement upon Conway's retention in the chapter 11 cases, or whether the only

3

22198873.5

additional amount that would be guaranteed upon Conway's retention would be one additional Monthly Fee.  Similarly, if the Upfront Fee and two months of Monthly Fees were paid to Conway prior to the Petition Date, any order approving the Application should clarify that the $120,000 in pre-petition payments on account of such fees should be credited against the Disposition Fee, as well as any other Monthly Fees paid post-petition, and all such amounts should be included in the calculation of the minimum Disposition Fee and credited against the final amounts paid to Conway.

### Conclusion

6.    Therefore, based on the foregoing, GM requests that the Court deny the Application.  In the alternative, if the Court grants the Application, approval should be conditioned on the clarifications to Conway's fee structure as set forth in Paragraph 4 herein.

Dated:  July 29, 2016                          Respectfully submitted,

By: /s/ Andrew M. Troop
    Andrew M. Troop

Andrew M. Troop (BBO #547179)
Pillsbury Winthrop Shaw Pittman LLP
1540 Broadway
New York, NY 10036
(212) 858-1000
andrew.troop@pillsburylaw.com

 -and-

HONIGMAN MILLER SCHWARTZ AND COHN LLP
Joseph R. Sgroi (admitted *pro hac vice*)
Scott B. Kitei (*pro hac vice* pending)
2290 First National Building
660 Woodward Avenue
Detroit, MI  48226
Telephone:  (313) 465-7570
Facsimile:   (313) 465-7571

4

22198873.5

Email:  jsgroi@honigman.com

*Counsel for General Motors LLC*

5

22198873.5