**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF MASSACHUSETTS**
**CENTRAL DIVISION**

| | |
|---|---|
| **In re**<br><br>**CLARK-CUTLER-MCDERMOTT COMPANY, *et al.*,**[1]<br><br>**Debtors.** | **Chapter 11**<br><br>**Case No. 16-41188**<br><br>**(Jointly Administered)** |

# DEBTORS' SECOND MODIFIED JOINT CHAPTER 11 PLAN OF LIQUIDATION

**K&L GATES LLP**
Charles A. Dale III (BBO No. 558839)
Sven T. Nylen (admitted *pro hac vice*)
David A. Mawhinney (BBO No. 681737)
State Street Financial Center
One Lincoln Street
Boston, Massachusetts 02111
Tel: (617) 261-3100
Fax: (617) 261-3175

E-mail:
chad.dale@klgates.com
sven.nylen@klgates.com
david.mawhinney@klgates.com

Dated: February 24, 2017

*Counsel to the Debtors and Debtors in Possession*

[1] The Debtors in these chapter 11 cases are Clark-Cutler-McDermott Company and CCM Automotive Lafayette LLC. CCM's corporate headquarters are located at 5 Fisher Street, Franklin, Massachusetts, 02038. Lafayette, a wholly owned subsidiary of CCM Automotive LLC, has its principal place of business at 1465 Shattuck Industrial Boulevard, Lafayette, Georgia 30728.

# TABLE OF CONTENTS

**Page**

ARTICLE I DEFINED TERMS, RULES OF INTERPRETATION, COMPUTATION OF TIME AND GOVERNING LAW ..... 1

A. Defined Terms. ..... 1
B. Rules of Interpretation. ..... 9
C. Computation of Time. ..... 10
D. Governing Law. ..... 10
E. Reference to Monetary Figures. ..... 10

ARTICLE II ADMINISTRATIVE CLAIMS AND PRIORITY TAX CLAIMS ..... 10

A. Administrative Claims. ..... 10
B. Priority Tax Claims. ..... 11
C. Statutory Fees ..... 11

ARTICLE III CLASSIFICATION AND TREATMENT OF CLAIMS AND INTERESTS ..... 11

A. Classification of Claims and Interests ..... 11
B. Substantive Consolidation ..... 12
C. Summary of Classification. ..... 12
D. Treatment of Claims and Interests. ..... 12
E. Special Provision Governing Claims that are Unimpaired. ..... 14
F. Acceptance or Rejection of the Plan. ..... 15
G. Subordination. ..... 15

ARTICLE IV MEANS FOR IMPLEMENTATION OF THE PLAN ..... 15

A. Liquidating Trust. ..... 15
B. Allocation of Liquidating Trust Assets Under the Global Settlement ..... 20
C. Cancellation of Existing Securities. ..... 22
D. Dismissal of GM Litigation ..... 22
E. Preservation of Causes of Action. ..... 22
F. Vesting of Assets. ..... 23

ARTICLE V FUNDING AND DISBURSEMENTS ..... 23

A. No Separate Disbursing Agents. ..... 23
B. Reserves. ..... 23
C. Cash Payments. ..... 23
D. Distribution for Allowed Claims and Interests. ..... 23
E. Compliance with Tax Requirements. ..... 24
F. Allocations. ..... 24
G. Fractional Dollars: De Minimis Distributions. ..... 24
H. Delivery of Distributions to Holders of Allowed Claims. ..... 24
I. No Penalty Claims. ..... 25

J. Setoffs and Recoupment. 25
K. Distributions by Liquidating Trust. 25
L. Claims Paid or Payable by Third Parties. 25

ARTICLE VI TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES 26

A. Assumption and Rejection of Executory Contracts and Unexpired Leases. 26
B. Claims Based on Rejection of Executory Contracts or Unexpired Leases. 26
C. Insurance Policies and Proceeds. 27

ARTICLE VII PROCEDURES FOR RESOLVING CONTINGENT, UNLIQUIDATED, AND DISPUTED CLAIMS 27

A. Claims Administration Responsibilities. 27
B. Estimation of Claims. 27
C. Adjustment to Claims Without Objection. 28
D. Time to File Objections to Claims. 28
E. Disallowance of Claims. 28
F. Amendments to Claims. 28
G. Tax Implications for Recipients of Distributions. 28
H. Offer of Judgment. 29
I. Release of Liens Securing Disputed Claims. 29
J. No Distributions Pending Allowance. 29
K. Distributions After Allowance. 29

ARTICLE VIII SETTLEMENT, RELEASE, INJUNCTION, AND RELATED PROVISIONS 29

A. Compromise and Settlement of Claims, and Controversies. 29
B. Binding Effect. 30
C. Release of Liens. 30
D. Liabilities to, and Rights of, Governmental Units. 30
E. Exculpation. 30
F. Releases. 30
G. Injunction. 31
H. Term of Injunctions or Stays. 32

ARTICLE IX CONDITIONS PRECEDENT TO CONSUMMATION OF THE PLAN 32

A. Conditions Precedent to the Effective Date. 32
B. Effect of Failure of Conditions. 32

ARTICLE X MODIFICATION, REVOCATION, OR WITHDRAWAL OF THE PLAN 33

A. Modification and Amendments. 33
B. Effect of Confirmation on Modifications. 33
C. Revocation or Withdrawal of Plan. 33

ARTICLE XI RETENTION OF JURISDICTION ........................................ 33

ARTICLE XII MISCELLANEOUS PROVISIONS ........................................ 35

A. Immediate Binding Effect. ........................................ 35
B. Additional Documents. ........................................ 36
C. Statutory Committee. ........................................ 36
D. Reservation of Rights. ........................................ 36
E. Successors and Assigns. ........................................ 36
F. Notices. ........................................ 36
G. Entire Agreement. ........................................ 37
H. Exhibits. ........................................ 37
I. Severability of Plan Provisions. ........................................ 37
J. Votes Solicited in Good Faith. ........................................ 37
K. Closing of Chapter 11 Case. ........................................ 38
L. No Admission Against Interest. ........................................ 38
M. No Waiver. ........................................ 38
N. Headings. ........................................ 38
O. Governing Law. ........................................ 38
P. Conflicts. ........................................ 39

# INTRODUCTION

Clark-Cutler-McDermott Company ("***CCM***") and CCM Automotive Lafayette LLC ("***Lafayette***," and collectively with CCM, the "***Debtors***") jointly propose this *Debtors' Second Modified Joint Chapter 11 Plan of Liquidation* (the "***Plan***") pursuant to section 1121(a) of the Bankruptcy Code. Holders of Claims and Interests should refer to the Disclosure Statement for a discussion of the Debtors' history, businesses, assets, operations, as well as a summary and description of this Plan.

## ARTICLE I
## DEFINED TERMS, RULES OF INTERPRETATION, COMPUTATION OF TIME AND GOVERNING LAW

A. *Defined Terms.*

As used in this Plan, capitalized terms have the meanings ascribed to them below.[2]

1. ***"Administrative Claim"*** means any Claim against the Debtors or their Estates for costs and expenses of administration pursuant to sections 503(b), 507(a)(2), 507(b) or 1114(e)(2) of the Bankruptcy Code, including: (a) the actual and necessary costs and expenses incurred after the Petition Date and through the Effective Date of preserving the Estates and conducting the wind down of the Debtors (such as wages, salaries or commissions for services and payments for goods and other services and leased premises) and (b) all fees and charges assessed against the Estates pursuant to section 1930 of chapter 123 of the Judicial Code.

2. ***"Administrative Claims Bar Date"*** means the date that is thirty (30) days from the Effective Date.

3. ***"Affiliate"*** shall have the meaning provided in section 101(2) of the Bankruptcy Code.

4. ***"Allowed"*** means with respect to any Claim against the Debtors or their Estates (including any Administrative Claim) or portion thereof: (a) a Claim that is listed on the Schedules as neither disputed, contingent nor unliquidated and for which no contrary Proof of Claim has been Filed and as to which no objection to allowance thereof, or action to reclassify, subordinate or otherwise limit recovery with respect thereto, shall have been interposed within such period of limitation fixed by this Plan, the Bankruptcy Code, the Bankruptcy Rules, or Final Order; (b) a Claim that is not a Disputed Claim or has been allowed by a Final Order; (c) a Claim that is allowed (i) pursuant to the terms of the Plan or (ii) in any stipulation that is approved by a Final Order; and (d) a Claim as to which a Proof of Claim has been timely Filed and as to which no objection has been Filed by the Claims Objection Deadline or action to reclassify, subordinate or otherwise limit recovery with respect thereto has been interposed within such time period of limitation fixed by the Plan, the Bankruptcy Code, the Bankruptcy Rules or a Final Order. Except for any Claim that is expressly Allowed herein, any Claim that has been or is hereafter

---

[2] Capitalized terms not otherwise defined herein shall have the meanings provided to such terms in the Bankruptcy Code.

listed in the Schedules as contingent, unliquidated, or disputed and for which no Proof of Claim has been Filed is not considered Allowed and such Person or Entity shall not be treated as a creditor with respect to such Claim for the purposes of voting and distributions under the Plan.

5. ***"Avoidance Actions"*** means any and all Causes of Action to avoid or recover a transfer of property, or avoid an obligation incurred by a Debtor, pursuant to any applicable section of the Bankruptcy Code, including sections 544, 545, 547, 548, 549, 550, 551, 553(b), and 724(a) of the Bankruptcy Code and any other applicable non-bankruptcy law, whether or not litigation has been commenced with respect to such Causes of Action as of the Effective Date.

6. ***"Bankruptcy Code"*** means chapter 11 of title 11 of the United States Code.

7. ***"Bankruptcy Court"*** means the United States Bankruptcy Court for the District of Massachusetts, including, to the extent of the withdrawal of the reference under 28 U.S.C.§ 157, the United States District Court for the District of Massachusetts.

8. ***"Bankruptcy Rules"*** means the Federal Rules of Bankruptcy Procedure promulgated under section 2075 of the Judicial Code and the general, local, and chambers rules of the Bankruptcy Court.

9. ***"Business Day"*** means any day, other than a Saturday, Sunday, or "legal holiday" (as defined in Bankruptcy Rule 9006(a)(6)).

10. ***"Cash"*** means cash and cash equivalents, including, but not limited to, bank deposits, wire funds, checks, and legal tender of the United States of America or equivalents thereof.

11. ***"CCM"*** shall have the meaning provided in the Introduction hereof.

12. ***"Causes of Action"*** means any action, Claim, cause of action, controversy, demand, right, action, Lien, indemnity, guaranty, suit, obligation, liability, damage, judgment, account, defense, offset, power, privilege, license and franchise of any kind or character whatsoever, known, unknown, contingent or non-contingent, matured or unmatured, suspected or unsuspected, liquidated or unliquidated, disputed or undisputed, secured or unsecured, assertable directly or derivatively, whether arising before, on, or after the Petition Date, in contract or in tort, in law or in equity, or pursuant to any other theory of law, which constitutes property of an Estate or a Non-Debtor CCM Entity. Causes of Action also include: (a) any right of setoff, counterclaim or recoupment and any claim for breaches of duties imposed by law or in equity that is property of an Estate; (b) the Avoidance Actions; (c) any Claim or defense including fraud, mistake, duress, and usury, and any other defense available under section 558 of the Bankruptcy Code that is property of an Estate; and (d) any state law fraudulent transfer claim that is property of an Estate.

13. ***"Chapter 11 Cases"*** means the Debtors' jointly administered cases under chapter 11 of the Bankruptcy Code pending under case number 16-41188 in the Bankruptcy Court.

14. ***"Claim"*** shall have the meaning provided in section 101(5) of the Bankruptcy Code.

15. ***"Claims Bar Date"*** means the date or dates established by the Bankruptcy Court by which Proofs of Claim must be Filed, specifically: (a) December 2, 2016 for non-Governmental Units; and (b) January 6, 2017 for Governmental Units.

16. ***"Claims Objection Deadline"*** means the date that is 120 days after the Effective Date, which date may be extended by the Bankruptcy Court, by which any objections to Claims against the Debtors must be Filed.

17. ***"Class"*** means, pursuant to section 1122(a) of the Bankruptcy Code, a class of Claims against or Interests in the Debtors as set forth in Article III.

18. ***"Committee"*** means the statutory committee of unsecured creditors appointed in the Chapter 11 Cases pursuant to section 1102 of the Bankruptcy Code.

19. ***"Confirmation"*** means the entry of the Confirmation Order on the docket of the Chapter 11 Cases.

20. ***"Confirmation Date"*** means the date upon which the Bankruptcy Court enters the Confirmation Order on the docket of the Chapter 11 Cases, within the meaning of Bankruptcy Rules 5003 and 9021.

21. ***"Confirmation Hearing"*** means the confirmation hearing held by the Bankruptcy Court pursuant to section 1129 of the Bankruptcy Code, as such hearing may be continued from time to time.

22. ***"Confirmation Order"*** means the order of the Bankruptcy Court confirming the Plan pursuant to section 1129 of the Bankruptcy Code.

23. ***"Consummation"*** means the occurrence of the Effective Date.

24. ***"Debtors"*** shall have the meaning provided in the Introduction hereof.

25. ***"Disclosure Statement"*** means the *Disclosure Statement for the Debtors' Second Modified Joint Chapter 11 Plan of Liquidation*, dated February 10, 2017, as amended, supplemented, or modified from time to time, including all exhibits and schedules thereto and references therein that relate to the Plan, and that is prepared and distributed in accordance with the Bankruptcy Code, the Bankruptcy Rules, and any other applicable law.

26. ***"Disputed"*** means, any Claim against a Debtor that is (a) listed in the Schedules as disputed, contingent, or unliquidated and for which a Proof of Claim has not been timely Filed; (b) subject to a timely objection and/or request for estimation in accordance with section 502(c) of the Bankruptcy Code and Bankruptcy Rule 3018, which objection and/or request for estimation has not been withdrawn or determined by a Final Order; (c) objected to in whole or in part on or before the Claim Objection Deadline; (d) held by a party that is adverse to the Debtors or the Liquidating Trustee in any pending litigation or contested matter and as to which no Final Order resolving such litigation or contested matter has been entered; or (e) disallowed pursuant to section 502(d) of the Bankruptcy Code. A Claim that is Disputed as to its amount shall not be Allowed in any amount for purposes of distribution until it is no longer a Disputed Claim.

27. ***"Effective Date"*** means the date selected by the Debtors that is a Business Day after the Confirmation Date on which (a) the conditions to the occurrence of the Effective Date have been met or waived and (b) no stay of the Confirmation Order is in effect.

28. ***"Entity"*** shall have the meaning provided by section 101(15) of the Bankruptcy Code.

29. ***"Estate"*** means each estate created for the Debtors in the Chapter 11 Cases pursuant to section 541 of the Bankruptcy Code.

30. ***"Exculpated Claim"*** means any Claim related to any act or omission derived from, based upon, related to or arising from: (a) the Chapter 11 Cases; (b) formulation, preparation, dissemination, negotiation, or filing of the Disclosure Statement, the Plan, the Plan Supplement, or any contract, instrument, release, agreement, or document created or entered into in connection with the Disclosure Statement, the Plan, or the Plan Supplement; (c) the filing of the Chapter 11 Cases; (d) any post-petition act taken or omitted to be taken in connection with the Chapter 11 Cases, including without limitation the Sales; (e) the pursuit of Confirmation and Consummation; and (f) the administration and implementation of the Chapter 11 Cases and the Plan.

31. ***"Exculpated Person"*** means each of: (a) the Debtors; (b) the members of the Committee solely in their respective capacities as such; (c) the Professionals retained by the Debtors and the Committee; (d) GM; and (e) with respect to the Entities in clauses (a) through (d), such Entity's predecessors, successors and assigns, subsidiaries, Affiliates, directors, officers, principals, shareholders, members, partners, employees, agents, advisory board members, financial advisors, attorneys, accounts, investment bankers, consultants, and other representatives solely in their respective capacities as such. Notwithstanding the foregoing, Elias Gomez shall <u>not</u> be released or exculpated under the Plan.

32. ***"Executory Contract"*** means a contract to which a Debtor is a party and that is subject to assumption or rejection under sections 365 or 1113 of the Bankruptcy Code.

33. ***"Federal Judgment Rate"*** means the federal judgment rate of interest in effect as of the Petition Date.

34. ***"Fee Claim"*** means an Administrative Claim asserted by: (a) a Professional for fees and expenses for legal, financial advisory, accounting, and other services and reimbursement of expenses that are allowable under sections 328, 330, 331, 503(b), and/or 1103 of the Bankruptcy Code; or (b) a member of the Committee for reimbursement of out-of-pocket expenses, other than legal fees, incurred in its capacity as member of the Committee. To the extent a Final Order denies or reduces any amount of a Professional's fees or expenses or a Committee member's expenses, then those reduced or denied amounts shall no longer constitute a Fee Claim.

35. ***"File" or "Filed"*** means file or filed with the Bankruptcy Court or its authorized designee in the Chapter 11 Cases.

36. "***Final Distribution***" means the distribution(s) under this Plan which: (a) after giving effect to such distribution, results in the remaining Liquidating Trust Assets having a value of less than $2,500; or (b) the Bankruptcy Court determines that such distribution is the Final Distribution.

37. ***"Final Order"*** means, as applicable, an order or judgment of the Bankruptcy Court or other court of competent jurisdiction with respect to the relevant subject matter, which has not been reversed, stayed, modified, or amended, and as to which the time to appeal or seek certiorari has expired and no appeal or petition for certiorari has been timely taken, or as to which any appeal that has been taken or any petition for certiorari that has been or may be filed has been resolved by the highest court to which the order or judgment could be appealed or from which certiorari could be sought or the new trial, reargument, or rehearing shall have been denied, resulting in no modification of such order, or has otherwise been dismissed with prejudice.

38. ***"General Unsecured Claim"*** means any Claim against a Debtor that (i) is neither Secured nor entitled to priority under the Bankruptcy Code or a Final Order and (ii) is not an Administrative Claim, a Priority Tax Claim, a GM Secured Claim, a Priority Non-Tax Claim, an Other Secured Claim, or a GM Unsecured Claim.

39. ***"Global Settlement"*** means the proposed resolution of the Chapter 11 Cases (including various disputes therein amongst the Debtors, the Committee and GM) set forth in the Term Sheet.

40. ***"GM"*** means General Motors LLC.

41. ***"GM Secured Claim"*** means that certain Secured Claim arising under, in connection with, or in any way related to: (a) that certain *Amended and Restated Security Agreement*, dated March 15, 2016, between General Motors LLC, on the one hand, and the Debtors and certain other borrowers, on the other hand; (b) those certain *Secured Promissory Notes* issued by the Debtors and certain other borrowers for the benefit of General Motors LLC, including without limitation those *Secured Promissory Notes* issued on March 14, March 16, March 24, April 25, May 6, May 16, May 24, May 27, June 10, June 20, June 23, June 27, June 30, and July 6, 2016; (c) that certain *Assignment Agreement* between GM and Wells Fargo Bank, National Association dated July 8, 2016; and (d) that certain *Third Amended and Restated Credit and Security Agreement*, dated as of May 23, 2012, as amended from time to time, between Wells Fargo Bank, National Association, and the one hand, and the Debtors and certain other borrows, on the other hand, and any notes, instruments, agreements, guarantees, mortgages, certificates, or other documents executed or delivered in connection therewith.

42. ***"GM Unsecured Claim"*** means that certain Claim held by GM as of the date hereof against a Debtor or a Non-Debtor CCM Entity that is neither Secured nor entitled to priority under the Bankruptcy Code or a Final Order.

43. ***"Governmental Claim"*** means any Claim against the Debtor Filed by a Governmental Unit.

44. ***"Governmental Unit***" shall have the meaning provided in section 101(27) of the Bankruptcy Code.

45. ***"Impaired"*** means, with respect to a Class of Claims or Interests, a Class of Claims or Interests that is impaired within the meaning of section 1124 of the Bankruptcy Code.

46. ***"Insurance Policies"*** means all insurance policies maintained by the Debtors and the Non-Debtor CCM Entities as of the Effective Date.

47. ***"Interests"*** means any equity security in a Debtor as defined in section 101(16) of the Bankruptcy Code, including all issued, unissued, authorized or outstanding shares of capital stock of a Debtor together with any warrants, options or contractual rights to purchase or acquire such equity securities at any time and all rights arising with respect thereto.

48. ***"Judicial Code"*** means title 28 of the United States Code, 28 U.S.C. §§ l-4001.

49. ***"Lafayette"*** shall have the meaning provided in the Introduction hereof.

50. ***"Lien"*** shall have the meaning provided by section 101(37) of the Bankruptcy Code.

51. ***"Liquidating Trust***" means the trust, of which the Liquidating Trustee shall serve as trustee, formed pursuant to this Plan, the Liquidating Trust Agreement, and the Confirmation Order.

52. ***"Liquidating Trust Agreement"*** means the agreement included in the Plan Supplement, as may be amended, setting forth the terms and conditions of the Liquidating Trust.

53. ***"Liquidating Trust Assets"*** means all property of the Substantively Consolidated Estate and the proceeds generated by any sale of AirLoc LLC (whether such transfer takes the form of a sale of assets or membership interests). Without limiting the generality of the foregoing, Liquidating Trust Assets shall include the Substantive Consolidated Estate's equity interests in AirLoc LLC and CCM Acoustics Holding S.A. de C.V.

54. ***"Liquidating Trust Board***" shall mean the board established pursuant to the Plan and the Liquidating Trust Agreement to advise, assist, and supervise the Liquidating Trustee. Prior to the filing of the Plan Supplement, the Committee shall select three (3) members of the Liquidating Trust Board and GM shall select two (2) members of the Liquidating Trust Board. In exercising responsibility and duties as members of the Liquidating Trust Board, the designees of GM shall be entitled to consider exclusively the interest of GM.

55. ***"Liquidating Trust Expense Reserve"*** means the amount determined from time to time by the Liquidating Trustee, with the advice and consent of the Liquidating Trust Board, that the Liquidating Trustee estimates will be required to perform his duties and pay expenses of the Liquidating Trust, including: (i) fees and costs of professionals retained by the Liquidating Trustee on and after the Effective Date; (ii) costs to obtain and maintain insurance, indemnity policy, or bond for the Liquidating Trust, the Liquidating Trustee, and employees, agents, and representatives that the Liquidating Trustee determines are appropriate or, to the extent that any

of such insurance, indemnity, or bond is not reasonably available, any funded reserves determined to be reasonable by the Liquidating Trustee to cover such contingencies; (iii) salaries, benefits, and other amounts required for any full-time or part-time employees, independent contractors, or consultants retained by the Liquidating Trustee; (iv) fees, costs, and expenses of the Liquidating Trust and the Liquidating Trustee; (v) taxes, interest, penalties, or other amounts that the Liquidating Trust or the Liquidating Trustee have incurred or determined that may be incurred or for which the Liquidating Trust or the Liquidating Trustee may be liable under any applicable law or order of any court; (vi) other payments, fees, charges, costs, or expenses of any kind whatsoever that the Liquidating Trust or the Liquidating Trustee have incurred or determined that may be incurred or for which the Liquidating Trust or the Liquidating Trustee may be liable under applicable law or order of any court, including, without limitation, all fees and charges assessed against the Estate under section 1930 of chapter 123 of title 28 of the United States Code. To the extent that the Liquidating Trustee seeks to increase the Liquidating Trust Expense Reserve to an amount in excess of the Trust Seed Fund plus the net revenues received from any rent paid on the Lafayette Property or under any services agreement, such an increase shall require the consent of the Liquidating Trust Board, which consent must include the consent of at least one of the GM designees of the Liquidating Trust Board.

56. ***“Liquidating Trustee”*** means Craig R. Jalbert, in his capacity as the trustee of the Liquidating Trust, and any successor thereto.

57. ***“Non-Debtor CCM Entities”*** means, collectively: (i) CCM Automotive LLC; (ii) CCMcD Real Estate LLC; (iii) CCM Automotive Hildebran LLC; (iv) CCMcD Real Estate Lafayette LLC; and (v) Duffy’s Park LLC.

58. ***“Other Secured Claims”*** means any Secured Claim that is not a GM Secured Claim.

59. ***“Person”*** shall have the meaning provided by section 101(41) of the Bankruptcy Code.

60. ***“Petition Date”*** means July 7, 2016, the date on which the Debtors commenced the Chapter 11 Cases.

61. ***“Plan”*** shall have the meaning provided in the Introduction hereof.

62. ***“Plan Supplement”*** means the compilation of documents and forms of documents, schedules and exhibits to the Plan, including the Liquidating Trust Agreement, to be filed no later than five (5) Business Days prior to the Confirmation Hearing.

63. ***“Priority Non-Tax Claims”*** means any Claim against a Debtor, other than an Administrative Claim or a Priority Tax Claim, entitled to priority in right of payment under section 507(a) of the Bankruptcy Code.

64. ***“Priority Tax Claim”*** means any Claim against a Debtor of the kind specified in section 507(a)(8) of the Bankruptcy Code.

65. ***"Professional"*** means any Person employed pursuant to a Final Order pursuant to sections 327, 363, or 1103 of the Bankruptcy Code and whose compensation for services rendered before or on the Effective Date shall be determined pursuant to sections 327, 328, 329, 330, 331 or 363 of the Bankruptcy Code.

66. ***"Proof of Claim"*** means a written proof of Claim Filed against a Debtor in the Chapter 11 Cases.

67. ***"Released Parties***" means: (a) the Debtors, the Non-Debtor CCM Entities, AirLoc LLC, and CCM Acoustics Holding S.A. de C.V.; (b) the members of the Committee solely in their respective capacities as such; (c) GM; and (d) with respect to the Entities in clauses (a) through (c), such Entity's predecessors, successors and assigns, subsidiaries, Affiliates, current and former directors, officers, principals, shareholders, members, partners, employees, agents, advisory board members, financial advisors, attorneys, accounts, investment bankers, consultants, and other representatives solely in their respective capacities as such. Notwithstanding the foregoing, Elias Gomez shall <u>not</u> be released or exculpated under the Plan.

68. ***"Resolution Event"*** means with respect to a Claim subject to an objection, (i) an order of the Bankruptcy Court is entered allowing such Claim pursuant to section 502(b) of the Bankruptcy Code, after notice and a hearing; (ii) an order of the Bankruptcy Court is entered temporarily allowing such Claim for voting purposes only pursuant to Bankruptcy Rule 3018(a), after notice and a hearing, provided that a motion for such an order must be filed by a holder of such Claim on or before March 24, 2017 at 5:00 p.m. prevailing Eastern Time; (iii) a stipulation or other agreement is executed between the holder of such Claim and the Debtors and/or the Committee resolving the objection and allowing such Claim in an agreed upon amount; (iv) a stipulation or other agreement is executed between the holder of such Claim and the Debtors and/or the Committee temporarily allowing the holder of such Claim to vote its Claim in an agreed upon amount; or (v) the pending objection to such Claim is voluntarily withdrawn;

69. ***"Sales"*** shall mean the sales of certain of the Debtors' assets pursuant to purchase agreements attached to that certain *Order Approving Sale of Substantially All Assets Free and Clear of All Liens, Claims, Encumbrances, and Interests and Granting Related Relief* [Docket No. 236].

70. ***"Schedules"*** means, collectively, the schedules of assets and liabilities, schedules of Executory Contracts and Unexpired Leases and statements of financial affairs Filed by the Debtors pursuant to section 521 of the Bankruptcy Code, as such schedules may be amended, modified or supplemented from time to time in accordance with Bankruptcy Rule 1009.

71. ***"Secured"*** means when referring to a Claim: (a) secured by a Lien on property in which an Estate has an interest, which Lien is valid, perfected, and enforceable pursuant to applicable law or by reason of a Final Order, or that is subject to setoff pursuant to section 553 of the Bankruptcy Code, to the extent of the value of the creditor's interest in the Estate's interest in such property or to the extent of the amount subject to setoff, as applicable, as determined pursuant to section 506(a) of the Bankruptcy Code; or (b) Allowed as such pursuant to the Plan.

72. ***"Securities Act"*** means the Securities Act of 1933, 15 U.S.C. §§ 77a-77aa, as amended, together with the rules and regulations promulgated thereunder.

73. ***"Security"*** means a security as defined in section 2(a)(l) of the Securities Act.

74. ***"Substantively Consolidated Estate"*** means the single estate resulting from the consolidation of the Debtors and the Non-Debtor CCM Entities under this Plan. From and after the Effective Date, the Liquidating Trustee shall be the sole representative of the Substantively Consolidated Estate, except as otherwise set forth in the Plan.

75. ***"Term Sheet"*** means that certain *Term Sheet for Global Settlement and Chapter 11 Plan*, dated February 24, 2017, substantially as discussed on the record at the hearing on February 1, 2017, a copy of which is attached to the Disclosure Statement.

76. ***"Trust Seed Fund"*** means $600,000 of initial funding for the costs of administering the Liquidating Trust which shall immediately be deemed part of the Liquidating Trust Expense Reserve on the Effective Date.

77. "***Unclaimed Property***" means any distribution under this Plan that is unclaimed thirty (30) days following the date of such distribution under this Plan.

78. "***Unclaimed Property Reserve"*** means any Unclaimed Property reserved for a period of thirty (30) days by the Liquidating Trustee.

79. ***"Unexpired Lease"*** means a lease to which the Debtor is a party that is subject to assumption or rejection under section 365 of the Bankruptcy Code.

80. ***"Unimpaired"*** means, with respect to a Class of Claims or Interests, a Class of Claims or Interests that is not impaired within the meaning of section 1124 of the Bankruptcy Code.

81. ***"U.S. Trustee"*** means the United States Trustee for Region 1.

82. "***Voting Creditors***" shall have the meaning provided in Article Article III.F..1 herein.

B. *Rules of Interpretation.*

For purposes of this Plan: (1) in the appropriate context, each term, whether stated in the singular or the plural, shall include both the singular and the plural, and pronouns stated in the masculine, feminine or neuter gender shall include the masculine, feminine and the neuter gender; (2) any reference herein to a contract, lease, instrument, release, indenture or other agreement or document being in a particular form or on particular terms and conditions means that the referenced document shall be substantially in that form or substantially on those terms and conditions; (3) any reference herein to an existing document, schedule or exhibit, whether or not Filed, having been Filed or to be Filed shall mean that document, schedule or exhibit, as it may thereafter be amended, modified or supplemented; (4) any reference to an Entity as a holder of a Claim or Interest includes that Entity's successors and assigns; (5) unless otherwise

specified, all references herein to "Articles" are references to Articles hereof or hereto; (6) unless otherwise specified, all references herein to exhibits are references to exhibits in the Plan Supplement; (7) unless otherwise specified, the words "herein," "hereof" and "hereto" refer to the Plan in its entirety rather than to a particular portion of the Plan; (8) subject to the provisions of any contract, certificate of incorporation, bylaw, instrument, release or other agreement or document entered into in connection with the Plan, the rights and obligations arising pursuant to the Plan shall be governed by, and construed and enforced in accordance with the applicable law, including the Bankruptcy Code and the Bankruptcy Rules; (9) captions and headings to Articles are inserted for convenience of reference only and are not intended to be a part of or to affect the interpretation of the Plan; (10) unless otherwise specified herein, the rules of construction set forth in section 102 of the Bankruptcy Code shall apply; (11) all references to docket numbers of documents Filed in the Chapter 11 Cases are references to the docket numbers under the Bankruptcy Court's CM/ECF system; and (12) all references to statutes, regulations, orders, rules of courts and the like shall mean as amended from time to time, and as applicable to the Chapter 11 Cases, unless otherwise stated.

C. *Computation of Time.*

Unless otherwise specifically stated herein, the provisions of Bankruptcy Rule 9006(a) shall apply in computing any period of time prescribed or allowed herein.

D. *Governing Law.*

Unless a rule of law or procedure is supplied by federal law (including the Bankruptcy Code and Bankruptcy Rules) or unless otherwise specifically stated, the laws of the Commonwealth of Massachusetts, without giving effect to the principles of conflict of laws, shall govern the rights, obligations, construction and implementation of the Plan, any agreements, documents, instruments or contracts executed or entered into in connection with the Plan (except as otherwise set forth in those agreements, in which case the governing law of such agreement shall control).

E. *Reference to Monetary Figures.*

All references in the Plan to monetary figures shall refer to currency of the United States of America, unless otherwise expressly provided.

## ARTICLE II
## ADMINISTRATIVE CLAIMS
## AND PRIORITY TAX CLAIMS

In accordance with section 1123(a)(l) of the Bankruptcy Code, Administrative Claims and Priority Tax Claims have not been classified and, thus, are excluded from the Classes of Claims and Interests set forth in Article III.

A. *Administrative Claims.*

Except to the extent that a holder agrees to less favorable treatment, each holder of an Allowed Administrative Claim shall be paid in full in Cash. Such Claims (other than Fee

Claims) shall be paid on the earlier of (a) on or as soon as reasonably practicable after the Effective Date if such Administrative Claim is Allowed as of the Effective Date or (b) on or as soon as reasonably practicable after the date such Administrative Claim is Allowed, if such Administrative Claim is not Allowed as of the Effective Date. Fee Claims shall be paid in accordance with the Global Settlement "waterfall" set forth at Article IV.B herein.

The Debtors or the Liquidating Trustee shall provide notice of the Administrative Claims Bar Date to all parties in interest in connection with a notice of the Effective Date. Applications for allowance and payment of Administrative Claims (including Fee Claims) that were not otherwise subject to the Claims Bar Date must be Filed on or before the Administrative Claims Bar Date. Holders of Administrative Claims that are required to, but do not, File and serve a request for payment of such Administrative Claims by the applicable bar date shall be forever barred, estopped and enjoined from asserting such Administrative Claims against the Liquidating Trust or the Liquidating Trust Assets and such Administrative Claims shall be deemed discharged as of the Effective Date. Objections to any Applications for allowance and payment of Administrative Claims (including Fee Claims) must be Filed and served on the Liquidating Trust and the requesting party no later than twenty-one (21) days from the service of such application.

B. *Priority Tax Claims.*

Except to the extent that the holder agrees to less favorable treatment, in exchange for full and final satisfaction, settlement, release and discharge, each holder of an Allowed Priority Tax Claim due and payable on or before the Effective Date shall receive, at the option of the Debtors, one of the following treatments: (i) Cash in an amount equal to the amount of such Allowed Priority Tax Claim on or as soon as reasonably practicable after the later of the Effective Date or the date on which such Priority Tax Claim becomes Allowed; (ii) Cash in an aggregate amount of such Allowed Priority Tax Claim payable in installment payments over a period of time not to exceed five years after the Petition Date, pursuant to section 1129(a)(9)(C) of the Bankruptcy Code; or (iii) such other treatment as may be agreed upon by such holder and the Debtors or otherwise determined upon a Final Order.

C. *Statutory Fees.*

On the Effective Date, the Debtors shall pay, in full in Cash, any fees due and owing to the U.S. Trustee at the time of Confirmation. On and after the Effective Date, the Liquidating Trust shall be responsible for (i) filing post-Confirmation reports and any pre-Confirmation monthly operating reports not filed as of the Confirmation Hearing in conformity with the U.S. Trustee guidelines and (ii) all applicable U.S. Trustee fees for the Chapter 11 Cases until the entry of a final decree or until the Chapter 11 Cases are closed or dismissed.

## ARTICLE III
## CLASSIFICATION AND TREATMENT OF CLAIMS AND INTERESTS

A. *Classification of Claims and Interests.*

Pursuant to section 1122 of the Bankruptcy Code, set forth below is a designation of Classes of Claims against and Interests in the Debtors. All Claims and Interests, except for

Administrative Claims and Priority Tax Claims, are classified in the Classes set forth in this Article III. A Claim or Interest is classified in a particular Class only to the extent that the Claim or Interest qualifies within the description of that Class and is classified in other Classes to the extent that any portion of the Claim or Interest qualifies within the description of such other Classes. A Claim or Interest also is classified in a particular Class for the purpose of receiving distributions pursuant to the Plan only to the extent that such Claim or Interest is an Allowed Claim or Interest in that Class and has not been paid, released or otherwise satisfied before the Effective Date.

B. *Substantive Consolidation*

Upon the Effective Date, the assets and liabilities of the Non-Debtor CCM Entities and the Debtors' Estates shall be substantively consolidated into the Substantively Consolidated Estate. All assets and liabilities of the Debtors and the Non-Debtor CCM Entities are consolidated for all purposes and are deemed to be assets and liabilities of the Substantively Consolidated Estate. Any duplicative Claims and other obligations of the Debtors and Non-Debtor CCM Entities shall be considered a single Claim or obligation entitled to a single satisfaction by the Substantively Consolidated Estate or Liquidating Trust. Any Claim scheduled by or Filed against either Debtor will be deemed a Claim against the Substantively Consolidated Estate. All Claims or obligations among the Debtors and the Non-Debtor CCM Entities are eliminated. Notwithstanding the foregoing, any third-party Claim against a Non-Debtor CCM Entity that is **not** duplicative of any Claim against a Debtor may be paid in full in the ordinary course by the Liquidating Trustee.

C. *Summary of Classification.*

The following chart summarizes the classification of Claims and Interests pursuant to the Plan:

| **Class** | **Claim/Interest** | **Status** | **Voting Rights** |
|---|---|---|---|
| 1 | GM Secured Claim | Impaired | Entitled to Vote |
| 2 | Other Secured Claims | Unimpaired | Deemed to Accept |
| 3 | Priority Non-Tax Claims | Unimpaired | Deemed to Accept |
| 4 | General Unsecured Claims | Impaired | Entitled to Vote |
| 5 | GM Unsecured Claims | Impaired | Entitled to Vote |
| 6 | Interests | Impaired | Deemed to Reject |

D. *Treatment of Claims and Interests.*

The treatment provided for the holders of Allowed Claims or Interests within each Class is specified below:

1. **Class 1 – GM Secured Claim**

(a) *Classification*: Class 1 consists of the GM Secured Claim.

(b) Allowance: The GM Secured Claim shall be Allowed in the amount of $7.5 million.

(c) *Treatment*: In full and final satisfaction, settlement, and release of such Secured Claim, the holder of the GM Secured Claim shall receive a beneficial interest in the Liquidating Trust entitling it to periodic Cash distributions under the Global Settlement as set forth in Article IV .B of the Plan.

(d) *Voting*: Class 1 is Impaired by the Plan. The holder of the Class 1 GM Secured Claim is entitled to vote to accept or reject the Plan.

2. **Class 2 – Other Secured Claims**

(a) *Classification:* Class 2 consists of Other Secured Claims against the Debtors.

(b) *Treatment:* Except to the extent that the holder agrees to less favorable treatment, in full and final satisfaction, settlement, and release, each holder of an Allowed Other Secured Claim shall receive all collateral securing such holder's Allowed Other Secured Claim on or as soon as reasonably practicable after the later of: (i) the Effective Date; (ii) the date on which such Other Secured Claim becomes Allowed; or (iii) such other date as may be ordered by the Bankruptcy Court.

(c) *Voting:* Class 2 is Unimpaired by the Plan, and each holder of a Class 2 Other Secured Claim is conclusively presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code. Therefore, holders of Class 2 Other Secured Claims are not entitled to vote to accept or reject the Plan.

3. **Class 3 – Priority Non-Tax Claims**

(a) *Classification*: Class 3 consists of Priority Non-Tax Claims against the Debtors.

(b) *Treatment:* Except to the extent that the holder agrees to a less favorable treatment, in full and final satisfaction, settlement, and release, each holder of an Allowed Priority Non-Tax Claim shall be paid in full in Cash on or soon as reasonably practicable after the later of: (i) the Effective Date; (ii) the date on which such Priority Non-Tax Claim becomes Allowed; or (iii) such other date as may be ordered by the Bankruptcy Court.

(c) *Voting:* Class 3 is Unimpaired by the Plan, and each holder of a Class 3 Priority Non-Tax Claim is conclusively presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code. Therefore, holders of Class 3 Priority Non-Tax Claims are not entitled to vote to accept or reject the Plan.

4. **Class 4 – General Unsecured Claims**

(a) *Classification*: Class 4 consists of General Unsecured Claims against the Debtors.

(b) *Treatment*: In full and final satisfaction, settlement, and release of each General Unsecured Claim, each holder of an Allowed General Unsecured Claim shall receive a beneficial interest in the Liquidating Trust entitling it to periodic Cash distributions under the Global Settlement as set forth in Article IV.B of the Plan.

(c) *Voting*: Class 4 is Impaired by the Plan. Holders of Class 4 General Unsecured Claims are entitled to vote to accept or reject the Plan.

5. **Class 5 – GM Unsecured Claim**

(a) *Classification*: Class 5 consists of the GM Unsecured Claim.

(b) *Allowance*: The GM Unsecured Claim shall be Allowed in the amount of $39 million.

(c) *Treatment*: In full and final satisfaction, settlement, and release of such Unsecured Claim, the holder of the Allowed GM Unsecured Claim shall receive a beneficial interest in the Liquidating Trust entitling it to periodic Cash distributions under the Global Settlement as set forth in Article IV.B of the Plan.

(d) *Voting*: Class 5 is Impaired by the Plan. The holder of the Class 5 GM Unsecured Claim is entitled to vote to accept or reject the Plan.

6. **Class 6 – Interests**

(a) *Classification*: Class 6 consists of Interests in the Debtors.

(b) *Treatment*: On the Effective Date, all Interests in the Debtors shall be cancelled and holders of such Interests shall not receive or retain any distribution or property on account of such Interests.

(c) *Voting*: Class 6 is Impaired by the Plan, and each holder of a Class 6 Interest is conclusively presumed to have rejected the Plan pursuant to section 1126(g) of the Bankruptcy Code. Holders of Class 6 Interests are not entitled to vote to accept or reject the Plan.

E. *Special Provision Governing Claims that are Unimpaired.*

Except as otherwise provided in the Plan, nothing under the Plan shall affect the Liquidating Trustee's rights in respect of any Claims that are Unimpaired, including all rights of the Debtors in respect of legal and equitable defenses to or setoffs or recoupments against any such Claims that are Unimpaired.

F. *Acceptance or Rejection of the Plan.*

1. Voting Classes

Classes 1, 4, and 5 are entitled to vote on the Plan (collectively, the "***Voting Creditors***"). Votes to accept or reject the Plan shall be solicited from Voting Creditors, provided that if the Claim of a Voting Creditor is the subject of a Claims objection, the vote of that Voting Creditor shall not be counted (subject to a Resolution Event), although any election to opt out of the Consensual Third-Party Releases shall be valid and recognized.

2. Presumed Acceptance of the Plan

Pursuant to section 1126(f) of the Bankruptcy Code, Classes 2 and 3 are deemed to have accepted the Plan and are not entitled to vote to accept or reject the Plan.

3. Presumed Rejection of the Plan

Pursuant to section 1126(g) of the Bankruptcy Code, Class 6 is deemed to have rejected the Plan and is not entitled to vote to accept or reject the Plan.

4. Confirmation Pursuant to Section 1129(b) of the Bankruptcy Code

To the extent that any Impaired Class rejects the Plan or is presumed to have rejected the Plan, the Debtors will request confirmation of the Plan under section 1129(b) of the Bankruptcy Code.

G. *Subordination.*

The Liquidating Trustee reserves the right to seek to reclassify any Allowed Claim, other than the Fee Claims, the GM Secured Claim, and the GM Unsecured Claim in accordance with any contractual, legal, or equitable subordination theories relating thereto.

## ARTICLE IV
## MEANS FOR IMPLEMENTATION OF THE PLAN

A. *Liquidating Trust.*

1. Creation of Liquidating Trust. On the Effective Date, the Liquidating Trust shall be created in accordance with the Liquidating Trust Agreement and funded by the Liquidating Trust Assets, which shall be transferred to the Liquidating Trust by CCM as duly authorized representative of the Substantively Consolidated Estate free and clear of Claims, Liens, encumbrances, Interests, and contractually-imposed restrictions except as otherwise provided herein. The Liquidating Trust shall be a newly-formed trust with no prior assets or liabilities. The Liquidating Trustee shall serve as the trustee of the Liquidating Trust. As will be set forth in the Liquidating Trust Agreement, holders of Allowed Claims entitled to

distributions under the Plan shall be deemed to receive uncertificated beneficial interests in the Liquidating Trust on the Effective Date.

2. The Liquidating Trustee. From and after the Effective Date, the Liquidating Trustee shall be the exclusive representative of the Liquidating Trust subject to the terms of the Liquidating Trust Agreement.

3. The Liquidating Trust Board. The Liquidating Trust Agreement shall provide that the Liquidating Trustee shall be subject to the Liquidating Trust Board, which shall function as a board of directors over the Liquidating Trust and the activities of the Liquidating Trustee. The Liquidating Trust Agreement shall provide that any decisions concerning the ultimate dispositions of AirLoc LLC, the Debtors' facility in Franklin, Massachusetts, and the Debtors' facility in Lafayette, Georgia shall require the affirmative vote of at least one the GM designee to the Liquidating Trust Board; provided, however, that no member of the Liquidating Trust Board may withhold its consent for purposes of modifying the Global Settlement or the Plan. Without limiting the foregoing, in exercising responsibility and duties as members of the Liquidating Trust Board, the designees of GM shall be entitled to consider exclusively the interests of GM. The Liquidating Trustee or any member of the Liquidating Trust Board may petition the Bankruptcy Court to resolve matters concerning the administration of the Liquidating Trust, including in the event of a voting deadlock.

4. Responsibilities of the Liquidating Trustee. The responsibilities of the Liquidating Trustee under the Liquidating Trust Agreement and this Plan shall include those set forth in the Liquidating Trust Agreement, including, without limitation, the following (a) the receipt, management, use, sale, lease, license or other disposition of the Liquidating Trust Assets; (b) the establishment and maintenance of such operating, reserve, and trust account(s) as the Liquidating Trustee deems are necessary and appropriate to carry out the terms of the Liquidating Trust; (c) the investment of Cash; (d) the pursuit of objections to, estimation of and settlements of Claims, regardless of whether such Claim is listed on the Schedules; (e) the prosecution of any Causes of Action not otherwise released under the Plan; (f) unless otherwise provided in the Plan, the calculation and distribution of all distributions to be made under this Plan; (g) the payment of any fees pursuant to 28 U.S.C. § 1930 incurred after the Effective Date until the closing of the Chapter 11 Cases; (h) to respond to reasonable requests for information regarding the administration of the Liquidating Trust made by parties in interest; and (i) such other responsibilities as may be vested in the Liquidating Trustee pursuant to this Plan, the Liquidating Trust Agreement, the Confirmation Order, other Final Orders, or as otherwise may be necessary and proper to carry out the provisions of this Plan. The Liquidating Trustee shall be responsible for the filing of all required tax returns and operating reports and the paying of taxes due from the Substantively Consolidated Estate or the Liquidating Trust and all other obligations on behalf of the Liquidating Trust, if any.

5. Powers of Liquidating Trustee. The powers of the Liquidating Trustee, as set forth in the Liquidating Trust Agreement shall include, without limitation and without further Bankruptcy Court approval, each of the following:

a. To exercise in a manner not inconsistent with the Plan all power and authority that may be or could have been exercised, commence all proceedings that

may be or could have been commenced and take all actions that may be or could have been taken by any member, officer, director, manager, or shareholder of the Debtors and Non-Debtor CCM Entities with like effect as if authorized, exercised and taken by unanimous action of such officers, directors, member, manager, and shareholders, including, without limitation, the dissolution of the Debtors and the Non-Debtor CCM Entities;

b. To hold, manage, maintain, use, sell, lease, license, compromise, or otherwise dispose of any Liquidating Trust Assets.

c. To maintain accounts, to make distributions provided for or contemplated by the Plan; and take other actions consistent with the Plan and the implementation thereof, including the establishment, re-evaluation, adjustment, and maintenance of appropriate reserves, in the name of the Liquidating Trustee;

d. Except to the extent set forth in the Plan, to object to any Claims regardless of whether such Claim was Disputed on the Effective Date, and to compromise or settle any Claims (prior to or after objection) regardless of whether such Claim was Disputed on the Effective Date, without approval of the Bankruptcy Court, free of any restriction of the Bankruptcy Code, the Bankruptcy Rules, the local rules of the Bankruptcy Court, other than those restrictions expressly imposed by the Plan, the Confirmation Order, or the Liquidating Trust Agreement;

e. To make decisions, without further Bankruptcy Court approval, regarding the retention or engagement of professionals, employees and consultants by the Liquidating Trust and the Liquidating Trustee and to pay the fees and charges incurred by the Liquidating Trust on or after the Effective Date for fees and expenses of professionals, disbursements, expenses, or related support services relating to the winding down of the Debtors and the Non-Debtor CCM Entities and implementation of the Plan without application to the Bankruptcy Court;

f. To file, if necessary, any and all tax and information returns required with respect to the Liquidating Trust as a grantor trust pursuant to Treas. Reg. 1.671-4(a) or otherwise, (ii) make tax elections by and on behalf of the Liquidating Trust, and (iii) pay taxes, if any, payable by the Liquidating Trust.

g. To take all other actions not inconsistent with the provisions of the Plan which the Liquidating Trustee deems reasonably necessary or desirable with respect to administering the Plan;

h. To collect any accounts receivable or other Claims of the Debtors, the Non-Debtor CCM Entities, or Substantively Consolidated Estate not otherwise disposed of pursuant to the Plan or the Confirmation Order;

i. To implement and/or enforce all provisions of the Plan, including entering into any agreement or executing any document required by or consistent with the Plan, the Confirmation Order, and the Liquidating Trust Agreement;

j. To abandon in any commercially reasonable manner, including abandonment or donation to a charitable organization of its choice, any Liquidating Trust Assets if the Liquidating Trustee concludes they are no benefit to the Estate;

k. Except as otherwise set forth herein, to prosecute and/or settle Causes of Action for the benefit of holders of Allowed Claims, with or without approval of the Bankruptcy Court, and exercise, participate in or initiate any proceeding before the Bankruptcy Court or any other court of appropriate jurisdiction and participate as a party or otherwise in any administrative, arbitrative, or other nonjudicial proceeding and pursue to settlement or judgment such actions;

l. To purchase or create and carry all insurance policies and pay all insurance premiums and costs the Liquidating Trustee deems necessary or advisable;

m. To collect and liquidate and/or distribute all Liquidating Trust Assets pursuant to the Plan, the Confirmation Order and the Liquidating Trust Agreement and administer the winding down of the affairs of the Debtors and Non-Debtor CCM Entities;

n. To hold any legal title to any and all of the Liquidating Trust Assets;

o. If any of the Liquidating Trust Assets are situated in any state or other jurisdiction in which the Liquidating Trustee is not qualified to act as trustee, to nominate and appoint a Person duly qualified to act as trustee in such state or jurisdiction and require from each such trustee such security as may be designated by the Liquidating Trustee in its discretion; confer upon such trustee all the rights, powers, privileges and duties of the Liquidating Trustee hereunder, subject to the conditions and limitations of the Liquidating Trust Agreement, except as modified or limited by the Liquidating Trustee and except where the conditions and limitations may be modified by the laws of such state or other jurisdiction (in which case, the laws or the state or jurisdiction in which the trustee is action shall prevail to the extent necessary); require such trustee to be answerable to the Liquidating Trustee for all monies, assets and other property that may be received in connection with the administration of all property; and remove such trustee, with or without cause, and appoint a successor trustee at any time by the execution by the Liquidating Trustee of a written instrument declared such trustee removed from office, and specifying the effective date and time of removal;

p. Retain any and all Insurance Policies of the Debtors and Non-Debtor CCM Entities providing coverage with respect to Claims; and

q. Exercise such other powers as may be vested in or assumed by the Liquidating Trustee pursuant to the Plan, the Liquidating Trust Agreement, the Confirmation Order, other Final Orders, or as may be necessary and proper to carry out the provisions of the Plan.

6. Unclaimed Property of the Liquidating Trust. The Liquidating Trustee shall establish the Unclaimed Property Reserve for all Unclaimed Property. Such Unclaimed Property shall be in held in a reserve, for a period of one hundred twenty (120) days, for the recipients of the beneficial interests in the Liquidating Trust entitled thereto under the

terms of this Plan and Confirmation Order. Once the distribution becomes Unclaimed Property, the Liquidating Trustee shall, subject to the limitations set forth herein, (a) hold such Unclaimed Property in the Unclaimed Property Reserve solely for the benefit of such holder or holders who have failed to claim such Unclaimed Property and (b) release the Unclaimed Property from the Unclaimed Property Reserve and deliver to the holder entitled thereto upon presentation of proper proof by such holder of its entitlement thereto. After the expiration of one hundred twenty (120) days, the holders theretofore entitled to such Unclaimed Property shall cease to be entitled thereto and shall be entitled to no further distribution under this Plan, and such Claims shall be deemed disallowed and expunged in their entirety and the funds shall be redistributed to the other holders of Allowed Claims in accordance with the terms of this Plan, Confirmation Order, and Liquidating Trust Agreement. Such funds shall not be subject to the escheat laws of any state.

7. Compensation of the Liquidating Trustee. The Liquidating Trustee shall be compensated as agreed upon by the Liquidating Trustee and the Liquidating Trust Board, pursuant to the terms of the Liquidating Trust Agreement. Any professionals retained by the Liquidating Trustee shall be entitled to reasonable compensation for services rendered and reimbursement of expenses incurred, subject to approval by the Liquidating Trustee. The payment of fees and expenses of the Liquidating Trustee and its professionals shall be made in the ordinary course of business and shall not be subject to Bankruptcy Court approval. The identity of the initial members of the Liquidating Trust Board and the proposed compensation for the Liquidating Trustee and any known professionals retained by the Liquidating Trustee shall be disclosed in the Plan Supplement.

8. Sale Free and Clear of Liens. The sale or other disposition of any Liquidating Trust Assets by the Liquidating Trustee in accordance with this Plan and the Liquidating Trust Agreement shall be free and clear of any and all Liens, Claims, Interests, and encumbrances pursuant to section 363(f) of the Bankruptcy Code. To the extent not released prior to the Effective Date, GM shall consent to and release any Liens necessary to facilitate the following transactions:

(a) a sale of the property commonly known as 25 Hayward Street in Franklin, Massachusetts for an amount not less than $200,000;

(b) a sale of the Debtors' joint venture interests in CCM Acoustics S.A.P.I de C.V. for a gross amount of not less than $800,000;

(c) a settlement of claims against Elias Gomes and Marves Industries for an amount not less than $400,000; and

(d) the sale of AirLoc LLC for an amount not less than $1,500,000

provided, however, that GM shall not consent to and release such Liens until the closing of each of the proposed transactions.

9. Transfer Taxes. Any transfer of Estate property, property owned by any Non-Debtor Entities, property owned by the Substantively Consolidated Estate or all or

any portion of the Liquidating Trust Assets pursuant to this Plan shall constitute a "transfer under a plan" within the purview of section 1146(c) of the Bankruptcy Code and shall not be subject to any stamp tax or similar tax.

10. Causes of Action. The Liquidating Trustee shall have the sole right to pursue any existing or potential Cause of Action, except those previously waived or released by the Debtors or Non-Debtor CCM Entities or released pursuant to this Plan, by informal demand and/or commencement of litigation.

11. Effective Date. On the Effective Date, CCM as representative of the Substantively Consolidated Estate and the Liquidating Trustee shall have the rights and powers set forth herein in order to carry out and implement the purposes and intent of the Plan.

12. Records. On or prior to the Effective Date, the Debtors and the Non-Debtor CCM Entities shall transfer to the Liquidating Trust all originals and/or copies of available documents and business records of the Debtors. The Liquidating Trust shall maintain such records until the earlier of: (a) the entry of a final decree in the Chapter 11 Cases or (b) five years from the filing of final tax returns for the Debtors and the Non-Debtor CCM Entities. Thereafter, said records may be destroyed or otherwise disposed of. If the Liquidating Trustee seeks to destroy or otherwise dispose of any of the records prior to the time periods set forth herein, the Liquidating Trustee shall be entitled to do so upon Final Order after notice and hearing.

13. Resignation of Officers and Directors. On the Effective Date, the members of the board of directors, officers, managers, and other similar management personnel of the Debtors and Non-Debtor CCM Entities shall be deemed to have resigned.

B. *The Global Settlement; Allocation and Distribution of Liquidating Trust Assets*

The Global Settlement represents a compromise of various Claims and disputes and incorporates: (a) the "gifting" of certain distributions which would otherwise be payable to GM on account of its Secured Claim; and (b) the partial subordination of the GM Unsecured Claim to General Unsecured Claims. Liquidating Trust Assets available for distributions under the Plan shall be allocated and distributed by the Liquidating Trustee according to the following "Waterfall":[3]

1. on the Effective Date, $600,000 shall be distributed to holders of Allowed Administrative Claims pursuant to section 503(b)(9) of the Bankruptcy Code; provided, however, that to the extent that aggregate Allowed Administrative Claims pursuant to section 503(b)(9) of the Bankruptcy Code are less than $600,000, the difference shall be used to partially fund the allocation set forth in Article IVB.4herein;

2. on the Effective Date $600,000 shall fund the Trust Seed Fund;

[3] Notwithstanding the mechanics of this Global Settlement "waterfall," no creditor will receive aggregate distributions greater 100% of its Allowed Claim.

3. on the Effective Date, $2,500,000 shall be distributed to holders of Allowed General Unsecured Claims on a pro rata basis;

4. on the Effective Date, or as soon as the Liquidating Trust has sufficient Cash to make such distributions, $3,600,000 shall be distributed as follows (i) 50% shall be distributed to GM on account of the GM Secured Claim; and (ii) 50% shall be distributed to holders of Allowed Fee Claims on a pro rata basis until Allowed Fee Claims are fully satisfied and, when so satisfied, the remainder of this allocation (up to a total of $3,600,000) shall be distributed to GM on account of the GM Secured Claim;

5. thereafter, Liquidating Trust Assets shall be distributed to GM on account of the GM Secured Claim until it receives aggregate distributions of $5,000,000 on account of the GM Secured Claim;

6. once GM receives aggregate distributions of $5,000,000 on account of its Secured Claim, the next $1,333,333.33 shall be distributed as follows (i) 75% (or $1,000,000) shall be distributed to GM on account of the GM Secured Claim; and (ii) 25% (or $333,333.33) shall be distributed to holders of Allowed General Unsecured Claims on a pro rata basis;

7. further distributable Liquidating Trust Assets, if any, up to $6,550,000, shall be distributed to holders of Allowed General Unsecured Claims on a pro rata basis until such holders receive aggregate distributions representing a 75% recovery on their respective Allowed General Unsecured Claims;

8. further distributable Liquidating Trust Assets, if any, shall be distributed as follows:

(a) Scenario A: to the extent that less than $6,550,000 is distributed to holders of Allowed General Unsecured Claims in the Seventh level of the Waterfall (Article IV.B.7 above) to achieve a 75% net distribution to holders of Allowed General Unsecured Claims through and including the Seventh level, the difference between $6,550,000 and the amount actually distributed under the Seventh level of the Waterfall shall be distributed 50% to GM on account of its Unsecured Claim and 50% to holders of Allowed General Unsecured Claims; or

(b) Scenario B: to the extent the $6,550,000 is distributed to holders of General Unsecured Claims in the Seventh level of the Waterfall and achieves a 75% net distribution to holders of Allowed General Unsecured Claims, there shall be no distributions to any creditors at this Eighth level (Article IV.B.8); or

(c) Scenario C: to the extent that $6,550,000 is distributed to holders of Allowed General Unsecured Claims in the Seventh level of the Waterfall but a 75% net distribution to holders of Allowed General Unsecured Claims through and including the Seventh level of the Waterfall is not achieved, the next up to $3,000,000 of distributable Liquidating Trust Assets shall be distributed 50% to GM on account of its Unsecured Claim and 50% to holders of Allowed General Unsecured Claims; provided that the aggregate net distribution to holders of Allowed General Unsecured Claims through and including this Eighth

level of the Waterfall shall not exceed 75% of the Allowed amounts of General Unsecured Claims

9. further distributable Liquidating Trust Assets, if any, shall be distributed up to $29,250,000 to GM on account of its Unsecured Claim; provided that the aggregate net distribution to GM on account of its Unsecured Claim at this "Ninth" level of the Waterfall shall not exceed 75% of the Allowed amount of GM's Unsecured Claim; and

10. further distributable Liquidating Trust Assets, if any, shall be distributed pro rata among holders of Allowed General Unsecured Claims and GM on account of its Unsecured Claim.

C. *Cancellation of Existing Securities.*

Except as otherwise provided in the Plan or any agreement, instrument, or other document incorporated in the Plan, on the Effective Date, the obligations of the Debtors or Non-Debtor CCM Entities pursuant, relating, or pertaining to any agreements, indentures, certificates of designation, bylaws, certificates or articles of incorporation, or similar documents governing the shares, certificates, notes, bonds, purchase rights, options, warrants, or other instruments or documents evidencing or creating any indebtedness or obligation of a Debtor or a Non-Debtor CCM Entity shall be released and discharged.

D. *Dismissal of GM Litigation*

On the Effective Date, Adv. Proc. No. 16-04083, *Official Committee of Unsecured Creditors, et al., v. General Motors, LLC*, shall be dismissed with prejudice and without costs.

E. *Preservation of Causes of Action.*

In accordance with section 1123(b) of the Bankruptcy Code, the Liquidating Trustee may pursue the Causes of Action in his discretion, other than those Causes of Action released under this Plan. Unless any Causes of Action against an Entity are expressly waived, relinquished, exculpated, released, compromised, or settled in the Plan or a Final Order, the Liquidating Trust expressly reserves all Causes of Action for later adjudication, and, therefore, no preclusion doctrine, including the doctrines of res judicata, collateral estoppel, issue preclusion, claim preclusion, estoppel (judicial, equitable or otherwise), or laches, shall apply to the Causes of Action upon, after, or as a consequence of the Confirmation or Consummation. In accordance with section 1123(b)(3) of the Bankruptcy Code, the Liquidating Trustee may exclusively enforce any and all Causes of Action that are not released hereunder. Subject to the terms of the Liquidating Trust Agreement, the Liquidating Trustee shall have the exclusive right, authority, and discretion to determine and to initiate, file, prosecute, enforce, abandon, settle, compromise, release, withdraw, or litigate to judgment any Cause of Action and to decline to do any of the foregoing without further notice to or action, order or approval of the Bankruptcy Court.

Without limiting the breadth and generality of the foregoing paragraph, any Avoidance Actions against any Entities not released under this Plan expressly preserved for prosecution by the Liquidating Trust for the benefit of holders of Allowed Claims.

F. *Vesting of Assets.*

Except as otherwise explicitly provided in this Plan, on the Effective Date all property comprising the Substantively Consolidated Estate shall vest in the Liquidating Trust to the same extent such property was held by the Estates and the Non-Debtor CCM Entities, free and clear of all Claims, Liens, charges, encumbrances, rights, and Interests of creditors and Interest holders, but subject to the terms of this Plan. As of the Effective Date, the Liquidating Trustee may use, acquire, manage, sell, lease, license, or otherwise dispose of Liquidating Trust Assets and settle and compromise Claims and Causes of Action subject only to the restrictions expressly imposed by this Plan, the Liquidating Trust Agreement, and the Confirmation Order.

## ARTICLE V
## FUNDING AND DISBURSEMENTS

A. *No Separate Disbursing Agents.*

The Liquidating Trustee shall make all distributions under the Plan on account of Allowed Claims against a Debtor pursuant to the terms of the Plan, Confirmation Order, and Liquidating Trust Agreement.

B. *Reserves.*

The Liquidating Trustee shall establish appropriate reserves, which shall be segregated (by book entry or otherwise as the Liquidating Trustee determines) and held by the Liquidating Trustee on and after the Effective Date for the payment of Disputed Claims to the extent they become Allowed.

C. *Cash Payments.*

Cash payments made pursuant to the Plan shall be in U.S. funds, by the means agreed to by payor and payee, including by check or wire transfer or, in the absence of an agreement, such commercially reasonable manner as the Liquidating Trustee shall determine in his or her sole discretion.

D. *Distribution for Allowed Claims and Interests.*

Except as otherwise provided in the Confirmation Order, or as otherwise ordered by the Bankruptcy Court, distributions to Allowed Claims shall be made as set forth in the Article III of the Plan. No holder of a Disputed Claim shall have any Claim against the applicable reserved funds, the Liquidating Trustee, the Liquidating Trust, the Debtors, or the Substantively Consolidated Estate with respect to such Disputed Claim until such Disputed Claim or Interest becomes Allowed, and no holder of a Disputed Claim shall have any right to interest on such Disputed Claim.

E. *Compliance with Tax Requirements.*

In connection with the Plan, to the extent applicable, the Liquidating Trust shall comply with all tax withholding and reporting requirements imposed on it by any Governmental Unit, and all distributions pursuant to the Plan shall be subject to such withholding and reporting requirements. Notwithstanding any provision in the Plan to the contrary, the Liquidating Trust shall be authorized to take all actions necessary or appropriate to comply with such withholding and reporting requirements, including liquidating a portion of the distribution to be made under the Plan to generate sufficient funds to pay applicable withholding taxes, withholding distributions pending receipt of information necessary to facilitate such distributions, including, without limitation, requiring that the holder of an Allowed Claim complete the appropriate IRS Form W-8 or IRS Form W-9, as applicable to each holder or establishing any other mechanisms they believe are reasonable and appropriate. The Liquidating Trust reserves the right to allocate all distributions made under the Plan in compliance with applicable wage garnishments, alimony, child support and other spousal awards, Liens, and encumbrances.

The Liquidating Trust shall not be required to make distributions on any Allowed Claim if the holder thereof has not provided all documentation necessary to determine all tax withholding and reporting requirements for such Allowed Claim. To the extent such documentation is not provided within thirty (30) days of a respective distribution, the distribution on such Allowed Claim shall be deemed Unclaimed Property.

F. *Allocations.*

Distributions in respect of Allowed Claims shall be allocated first to the principal amount of such Claims (as determined for federal income tax purposes) and then, to the extent the consideration exceeds the principal amount of the Claims, to any portion of such Claims for accrued but unpaid interest.

G. *Fractional Dollars: De Minimis Distributions.*

Notwithstanding any other provision of the Plan, the Liquidating Trustee shall not be required to make distributions or payments of fractions of dollars, and whenever any payment of a fraction of a dollar under the Plan would otherwise be called for, the actual payment made shall reflect a rounding down of such fraction to the nearest whole dollar. In addition, the Liquidating Trustee shall not be required to make any distribution in an amount less than $50.00. To the extent that such a distribution shall be called for as part of any interim distribution, the Liquidating Trustee shall establish a reserve for all distributions in the amount of less than $50.00 and shall, when and if the holder of a Claim is entitled to a distribution of $50.00 or more, make such distribution at such time. The Liquidating Trustee shall not be required to make any Final Distribution to a particular holder of less than $50.00 and all monies otherwise payable in such amount shall be donated to a charitable organization at the sole discretion of the Liquidating Trustee.

H. *Delivery of Distributions to Holders of Allowed Claims.*

Distributions to holders of Allowed Claims shall be made at the addresses set forth in the Schedules unless such addresses are superseded by Proofs of Claim or transfers of

Claims filed pursuant to Bankruptcy Rule 3001 or at the last known addresses of such holders if the Liquidating Trustee has been notified in writing of a change of address. If the distribution to any holder of an Allowed Claim is returned to the Liquidating Trustee as undeliverable or otherwise unclaimed, such Unclaimed Property shall be held in a reserve as set forth in Article Article IVA.6 of the Plan.

If there is any residual Unclaimed Property at the time of the dissolution of the Liquidating Trust, such residual Unclaimed Property shall be available for a subsequent distribution or donated to a charitable organization at the sole discretion of the Liquidating Trustee.

I. *No Penalty Claims.*

Unless otherwise specifically provided for in the Plan or the Confirmation Order, no holder of any Claim will be entitled to allowance of, or to receive any payment on account of, any penalty arising with respect to or in connection with such Claim and any such penalty shall be deemed disallowed and expunged.

J. *Setoffs and Recoupment.*

The Liquidating Trust may, but shall not be required to, setoff against or recoup from any Claims of any nature whatsoever that the Debtors or Non-Debtor CCM Entities may have against the claimant pursuant to section 558 of the Bankruptcy Code or otherwise, but neither the failure to do so nor the allowance of any Claim hereunder shall constitute a waiver or release by the Debtors or the Liquidating Trust of any such Claim it may have against the holder of such Claim.

K. *Distributions by Liquidating Trust.*

The Liquidating Trustee shall not be obligated to make a distribution that would impair the ability of the Liquidating Trust to pay the expenses incurred by the Liquidating Trust.

L. *Claims Paid or Payable by Third Parties.*

1. <u>Claims Paid by Third Parties</u>

The Liquidating Trust shall reduce in full a Claim, and such Claim shall be disallowed without a Claim objection having to be Filed and without any further notice to or action, order, or approval of the Bankruptcy Court, to the extent that the holder of such Claim receives payment in full on account of such Claim from a party that is not a Debtor. To the extent a holder of such Claim receives a distribution on account of such Claim and receives payment from a party that is not a Debtor on account of such Claim, such holder shall repay, return, or deliver any distribution to the Liquidating Trust, to the extent the holder's total recovery on account of such Claim from the third party and under the Plan exceeds the amount of such Claim as of the date of any such distribution under the Plan. The Substantively Consolidated Estate and Liquidating Trust reserve all of rights, remedies, claims, and actions against any such holders who fail to repay or return any such distribution.

2. Claims Payable by Third Parties

No distributions under the Plan shall be made on account of an Allowed Claim that is payable pursuant the Insurance Policies until the holder of such Allowed Claim has exhausted all remedies with respect to such Insurance Policy. To the extent that one or more of the insurers agrees to satisfy in full or in part a Claim, then immediately upon such insurers' agreement, the applicable portion of such Claim may be expunged without a Claims objection having to be Filed and without any further notice to or action, order, or approval of the Bankruptcy Court.

3. Applicability of Insurance Policies

Except as otherwise provided in the Plan, distributions to holders of Allowed Claims shall be in accordance with the provisions of any applicable Insurance Policy.

## ARTICLE VI
## TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES

A. *Assumption and Rejection of Executory Contracts and Unexpired Leases.*

Except for the Insurance Policies which are dealt with below, on the Effective Date, any and all Executory Contracts and Unexpired Leases shall be deemed rejected as of the Effective Date, unless such Executory Contract or Unexpired Lease: (i) was assumed or rejected previously by the Debtors; (ii) previously expired or terminated pursuant to its own terms; or (iii) is the subject of a motion to assume Filed on or before the Effective Date.

Entry of the Confirmation Order by the Bankruptcy Court shall constitute a finding and order that the Debtor has satisfied all of the requirements of section 1113 of the Bankruptcy Code, and that the Collective Bargaining Agreement between CCM and the New England Joint Board, Local 31T of UNITE-HERE is and shall be rejected and terminated as of the Effective Date.

Entry of the Confirmation Order shall constitute a Final Order approving the rejection of such Executory Contracts or Unexpired Leases pursuant to sections 365(a), 1113, and 1123 of the Bankruptcy Code. Unless otherwise indicated, rejection of Executory Contracts and Unexpired Leases pursuant to the Plan shall be effective as of the Effective Date.

B. *Claims Based on Rejection of Executory Contracts or Unexpired Leases.*

Proofs of Claim with respect to Claims arising from the rejection of Executory Contracts or Unexpired Leases, if any, must be Filed with the Bankruptcy Court within thirty (30) days after the date of entry of an order of the Bankruptcy Court (including, but not limited to, the Confirmation Order) approving such rejection. **Any Claims arising from the rejection of an Executory Contract or Unexpired Lease not Filed within such time will not be considered Allowed and such Person or Entity shall not be treated as a creditor for purposes of distributions under the Plan.** Claims arising from the rejection of Executory Contracts or Unexpired Leases shall be classified as General Unsecured Claims and shall be treated in accordance with Class 4 of the Plan.

C. *Insurance Policies and Proceeds.*

Any and all proceeds of the Insurance Policies received by or payable to the Debtors or the Non-Debtor CCM Entities shall be deemed assigned to the Liquidating Trust.

Except to the extent determined by Final Order to be Executory Contracts, the Insurance Policies and any agreements, documents, or instruments relating thereto shall not be treated as or deemed to be Executory Contracts. On the Effective Date, the Liquidating Trust retains all Insurance Policies and nothing in the Plan, including any releases, shall diminish or impair the enforceability of the Insurance Policies that cover claims against a Debtor or any other Entity.

To the extent any Insurance Policies are determined by Final Order to be Executory Contracts subject to assumption pursuant to section 365 of the Bankruptcy Code, such Insurance Policies shall not be assumed unless such relief is sought by the Liquidating Trustee, within 60 days after entry of a Final Order determining that such Insurance Policies constitute Executory Contracts, and is approved by the Court.

## ARTICLE VII
## PROCEDURES FOR RESOLVING CONTINGENT, UNLIQUIDATED, AND DISPUTED CLAIMS

A. *Claims Administration Responsibilities.*

After the Effective Date, the Liquidating Trust shall have and retain any and all rights and defenses that the Debtors and Non-Debtor CCM Entities had with respect to any Claim immediately before the Effective Date. Except as otherwise specifically provided below and elsewhere in the Plan, after the Effective Date, the Liquidating Trust shall have the sole authority: (i) to File, withdraw, or litigate to judgment objections to Claims; (ii) to settle or compromise Disputed Claims or Interests without any further notice to or action, order, or approval by the Bankruptcy Court; and (iii) to direct the Clerk of the Bankruptcy Court to administer and adjust the claims register to reflect any such settlements or compromises without any further notice to or action, order, or approval by the Bankruptcy Court. Any objections to Claims filed by the Debtors or Committee that remain pending before the Bankruptcy Court as of the Effective Date shall be deemed assigned to the Liquidating Trustee to litigate, settle or compromise, or withdraw. In addition, any other party in interest, including GM, at such party's sole cost and expense, shall have the authority to File or litigate to judgment objections to Claims, with the exception of any Claims expressly Allowed pursuant to this Plan. Notwithstanding the foregoing, the United States Trustee shall have sole authority to litigate to judgment the *Objection to Proofs of Claim* filed on September 19, 2016 [Docket No. 19], and authority to litigate such objection shall not transfer to the Liquidating Trust.

B. *Estimation of Claims.*

Before or after the Effective Date, the Debtors or Liquidating Trust, as applicable, may (but are not required to) at any time request that the Bankruptcy Court estimate any Disputed Claim that is contingent or unliquidated pursuant to section 502(c) of the Bankruptcy Court for any reason, regardless of whether any party previously has objected to such Claim or

whether the Bankruptcy Court has ruled on any such objection, and the Bankruptcy Court shall retain jurisdiction to estimate any such Claim, including during the litigation of any objection to any Claim or during the appeal relating to such objection. Notwithstanding any provision otherwise in the Plan, a Claim that has been expunged from the claims register, but that either is subject to appeal or has not been the subject of a Final Order, shall be deemed to be estimated at zero dollars, unless otherwise ordered by the Bankruptcy Court. In the event that the Bankruptcy Court estimates any contingent or unliquidated Claim, that estimated amount shall constitute a maximum limitation on such Claim for all purposes under the Plan (including for purposes of distributions), and the Liquidating Trust may elect to pursue any supplemental proceedings to object to any ultimate distribution on such Claim.

C. *Adjustment to Claims Without Objection.*

Any Claim that has been paid or satisfied, or any Claim that has been amended or superseded, cancelled, or otherwise expunged (including pursuant to the Plan), or any Claim whose treatment has been deemed modified by this Plan, or any Claim whose treatment has been agreed to by the holder of such Claim, may be adjusted or expunged (including on the claims register, to the extent applicable) by the Liquidating Trust, without a Claims objection or any other notice or motion having to be Filed and without any further notice to or action, order, or approval of the Bankruptcy Court.

D. *Time to File Objections to Claims.*

Any objection to Claims against a Debtor shall be Filed on or before the Claims Objection Deadline.

E. *Disallowance of Claims.*

Except as provided herein or otherwise agreed, any and all Proofs of Claim Filed after the Claims Bar Date or Administrative Claims Bar Dates, as applicable, shall be deemed disallowed and expunged as of the Effective Date without any further notice to or action, order or approval of the Bankruptcy Court, and holders of such Claims may not receive any distributions on account of such Claims, unless on or before the Confirmation Hearing such late Claim has been deemed timely Filed by a Final Order; provided, however, that nothing in this Article VII.E shall act to automatically disallow an amendment of a timely-filed Proof of Claim.

F. *Amendments to Claims.*

On or after the Effective Date, a Claim may not be Filed or amended without the prior authorization of the Bankruptcy Court or the Liquidating Trust, unless the proposed amended Claim is for a lesser amount than the original Claim. Absent such authorization, any new or amended Claim Filed shall be deemed disallowed in full and expunged without any further action.

G. *Tax Implications for Recipients of Distributions.*

Notwithstanding any other provision of the Plan, each Entity receiving a distribution of Cash or other consideration pursuant to the Plan shall have the sole and exclusive

responsibility for the satisfaction and payment of any tax obligations imposed on it by any Governmental Unit on account of the distribution, including income, withholding, and other tax obligations.

H. *Offer of Judgment.*

The Liquidating Trust is authorized to serve upon a holder of a Claim an offer to allow judgment to be taken on account of such Claim, and pursuant to Bankruptcy Rule 7068 and 9014, Federal Rule of Civil Procedure 68 shall apply to such offer of judgment. To the extent the holder of a Claim must pay the costs of Liquidating Trust, after making of such offer, the Liquidating Trust is entitled to setoff such amounts against the amount of any distribution to be paid to such holder.

I. *Release of Liens Securing Disputed Claims.*

If a Secured Claim is a Disputed Claim, the holder of such Claim shall be deemed to have released any Lien on its collateral, if any, pending determination of its Allowed Secured Claim, upon: (i) payment to the holder of such Disputed Claim the undisputed portion of such Secured Claim; and (ii) the placement of the disputed portion thereof into escrow.

J. *No Distributions Pending Allowance.*

If an objection to a Claim or portions thereof is Filed, no payment or distribution provided under the Plan shall be made on account of such Claim or portions thereof unless and until such Disputed Claim becomes Allowed.

K. *Distributions After Allowance.*

To the extent that a Disputed Claim ultimately becomes Allowed, distributions (if any) shall be made to the holder in accordance with the provisions of the Plan. As soon as practicable after the date that the order or judgment of the Bankruptcy Court allowing any Disputed Claim becomes a Final Order, the Liquidating Trust shall provide to the holder thereof the distribution (if any) to which such holder is entitled under the Plan, without any interest to be paid on account thereof.

## ARTICLE VIII
## SETTLEMENT, RELEASE, INJUNCTION, AND RELATED PROVISIONS

A. *Compromise and Settlement of Claims, and Controversies.*

Pursuant to sections 363 and 1123 of the Bankruptcy Code and Bankruptcy Rule 9019, and in consideration for the distributions and other benefits provided pursuant to the Plan, the provisions of the Plan shall constitute a good faith compromise of all Claims, Interests, and controversies relating to the contractual, legal, and subordination rights with respect to any Allowed Claim, and all Claims and controversies belonging to the Substantively Consolidated Estate. The entry of the Confirmation Order shall constitute the Bankruptcy Court's approval of the compromise or settlement of all such Claims, Interests, and controversies, as well as a finding by the Bankruptcy Court that such compromise or settlement, including the Global Settlement, is

in the best interests of the Debtors, their Estates, and holders of Claims and Interests, and is fair, equitable, and reasonable. In accordance with the provisions of the Plan, pursuant to section 363 of the Bankruptcy Code and Bankruptcy Rule 9019(a), without any further notice to or action, order or approval of the Bankruptcy Court, after the Effective Date, the Liquidating Trust may compromise and settle (a) Claims against the Substantively Consolidated Estate and (b) the Substantively Consolidated Estate's Causes of Action against any Entities.

B. *Binding Effect.*

The Plan shall be binding upon and inure to the benefit of the Substantively Consolidated Estate, all present and former holders of Claims and Interests, and their respective successors and assigns.

C. *Release of Liens.*

Except as otherwise provided in the Plan or in any contract, instrument, release, or other agreement or document created pursuant to the Plan, on the Effective Date, all mortgages, deeds of trust, Liens, pledges or other security interests against the Liquidating Trust Assets shall be fully released and discharged, and all of the right, title, and interest of any holder of such mortgages, deeds of trust, Liens, pledges, or other security interests shall revert to the Liquidating Trustee.

D. *Liabilities to, and Rights of, Governmental Units.*

Nothing in the Plan or Confirmation Order shall discharge, release, or preclude: (1) any liability to a Governmental Unit that is not a Claim; (2) any Claim of a Governmental Unit arising on or after the Confirmation Date; (3) any liability to a Governmental Unit on the part of any Entity other than the Debtors, the Non-Debtor CCM Entities, or Liquidating Trust; (4) any valid right of setoff or recoupment by a Governmental Unit; or (5) any criminal liability. Nothing in the Plan or Confirmation Order shall enjoin or otherwise bar any Governmental Unit from asserting or enforcing, outside the Bankruptcy Court, any liability described in the preceding sentence. The Plan and Confirmation Order are not intended and shall not be construed to bar any Governmental Unit from, after the Confirmation Date, pursuing any police or regulatory action.

E. *Exculpation.*

**None of the Exculpated Persons shall have or incur any liability for any Exculpated Claim, except for actual fraud, willful misconduct, or gross negligence, and in all respects, the Exculpated Persons shall be entitled to reasonably rely upon the advice of counsel with respect to their duties and responsibilities under the Plan.**

F. *Releases*

1. Releases by the Substantively Consolidated Estate

**As of the Effective Date, for good and valuable consideration, the adequacy of which is hereby confirmed, the Debtors, the Non-Debtor CCM Entities, and the**

**Liquidating Trustee, and any Person seeking to exercise the rights of the Substantively Consolidated Estate or the Liquidating Trust, shall be deemed to forever release, waive, and discharge the Released Parties of all claims, obligations suits, judgments, damages, demands, debts, rights, remedies, Causes of Action and liabilities of any nature whatsoever, whether direct or derivative, including, without limitation, any of the foregoing in connection with or related to the Debtors, the Non-Debtor CCM Entities, the Chapter 11 Cases, the Sales, Adv. Proc. No. 16-04083, the Global Settlement, or the Plan, whether liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, then existing or hereafter arising, in law, equity, or otherwise, that are or may be based in whole or in part upon any act, omission, transaction, event or other occurrence taking place or existing on or prior to the Effective Date.**

2. Consensual Third-Party Releases

**As of the Effective Date, for good and valuable consideration, the adequacy of which is hereby confirmed, all Voting Creditors who do not timely and affirmatively exercise their right to opt-out of such release, shall be deemed to forever release, waive, and discharge the Released Parties of all claims, obligations suits, judgments, damages, demands, debts, rights, remedies, causes of action and liabilities of any nature whatsoever, whether direct or derivative, and which relates directly to (i) such holder's business dealings with the Debtors, the Non-Debtor CCM Entities, AirLoc LLC, or (ii) the Chapter 11 Cases, the Sales, the Global Settlement, or the Plan (collectively the "*Released Claims*"), whether such Released Claims are liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, then existing or hereafter arising, in law, equity, or otherwise, that are or may be based in whole or in part upon any act, omission, transaction, event or other occurrence taking place or existing on or prior to the Effective Date.**

**Notwithstanding the foregoing, GM shall not be deemed to release any right of setoff against CCM Acoustics Holdings S.A. de C.V.**

G. *Injunction.*

**Except as otherwise provided in the Plan or the Confirmation Order, as of the Confirmation Date, all Entities that have held, hold, or may hold a Claim or other debt or liability against a Debtor or Interest in a Debtor are permanently enjoined from taking any of the following actions against the Debtors, the Released Parties, or the Liquidating Trust or any of their property on account of such Claims or Interests: (i) commencing or continuing, in any manner or in any place, any action, or other proceeding; (ii) enforcing, attaching, collecting, or recovering in any manner any judgment, award, decree, or order; (iii) creating, perfecting, or enforcing any lien, or encumbrance; (iv) asserting any right of setoff, subrogation, or recoupment of any kind against any debt, liability, or obligation including, but not limited to, on account of or in connection with or with respect to any Claims or Interests unless such holder has filed a motion requesting the right to perform such setoff on or before the Confirmation Date; and (v) commencing or continuing in any manner or in any place, any action that does not comply with or is inconsistent with the Plan**.

H. *Term of Injunctions or Stays.*

Unless otherwise provided in the Plan or Confirmation Order, all injunctions or stays in effect in the Chapter 11 Cases pursuant to section 105 or 362 of the Bankruptcy Code or any Final Order, and existent on the Confirmation Date (excluding any injunctions or stays contained in the Plan or the Confirmation Order), shall remain in full force and effect until the Effective Date. All injunctions or stays contained in the Plan or the Confirmation Order shall arise and remain in effect from and after the Effective Date..

## ARTICLE IX
## CONDITIONS PRECEDENT TO
## CONSUMMATION OF THE PLAN

A. *Conditions Precedent to the Effective Date.*

It shall be a condition to the Effective Date of the Plan that the following conditions shall have been satisfied or waived by the unanimous consent of the Debtors, the Committee, and GM:

1. The Confirmation Order, in form and substance acceptable to the Debtors, the Committee, and GM, shall have been duly entered and be a Final Order.

2. The Debtors and the Non-Debtor CCM Entities shall collectively have at least $5 million of Cash.

3. Projected Allowed Administrative Claims pursuant to section 503(b)(9) shall not materially exceed $600,000.

4. GM shall have voted to accept the Plan and shall not have opted-out of the releases contemplated in Article Article VIIIF.2 of the Plan.

5. There shall be no material breaches of any parties' obligations under the Term Sheet.

6. All actions, documents, certificates, and agreements necessary to implement this Plan shall have been effected or executed and delivered to the required parties and, to the extent required, Filed with the applicable Governmental Units in accordance with applicable laws.

B. *Effect of Failure of Conditions.*

Unless expressly set forth herein, if the Consummation of the Plan does not occur, the Plan shall be null and void in all respects and nothing contained in the Plan or the Disclosure Statement shall: (1) constitute a waiver or release of any Claims by the Debtors, any holders of Claims or Interests, or any other Entity; (2) prejudice in any manner the rights of the Debtors, any holders of Claims or Interests, or any other Entity; or (3) constitute an admission, acknowledgment, offer, or undertaking by the Debtors, any holder of any Claim or Interests, or any other Entity in any respect.

## ARTICLE X
## MODIFICATION, REVOCATION, OR WITHDRAWAL OF THE PLAN

A. *Modification and Amendments.*

Except as otherwise specifically provided in the Plan, the Debtors reserve the right to modify the Plan, whether such modification is material or immaterial, and seek Confirmation consistent with the Bankruptcy Code. Subject to certain restrictions and requirements set forth in section 1127 of the Bankruptcy Code and Bankruptcy Rule 3019 (as well as those restrictions on modifications set forth in the Plan), the Debtors expressly reserve the right to revoke or withdraw, to alter, amend, or modify the Plan, one or more times, after Confirmation, and, to the extent necessary, may initiate proceedings in the Bankruptcy Court to so alter, amend, or modify the Plan, or remedy any defect or omission, or reconcile any inconsistencies in the Plan, the Disclosure Statement or the Confirmation Order, in such matters as may be necessary to carry out the purposes and intent of the Plan.

B. *Effect of Confirmation on Modifications.*

Entry of a Confirmation Order shall mean that all modifications or amendments to the Plan since the solicitation thereof are approved pursuant to section 1127(a) of the Bankruptcy Code and do not require additional disclosure or re-solicitation under Bankruptcy Rule 3019.

C. *Revocation or Withdrawal of Plan.*

The Debtors reserve the right to revoke or withdraw the Plan before the Confirmation Date and to file a subsequent plan. If the Debtors revoke or withdraw the Plan, or if Confirmation or Consummation does not occur, then: (l) the Plan shall be null and void in all respects; (2) any settlement or compromise embodied in the Plan (including the fixing or limiting to an amount certain of the Claims or Class of Claims), assumption or rejection of Executory Contracts or Unexpired Leases effected by the Plan, and any document or agreement executed pursuant to the Plan, shall be deemed null and void; and (3) nothing contained in the Plan shall: (a) constitute a waiver or release of any Claim or Interest; (b) prejudice in any manner the rights of the Debtors, any holder of a Claim or Interest, or any other Entity; or (c) constitute an admission, acknowledgement, offer, or undertaking of any sort by the Debtors, any holder of a Claim or Interest, or any other Entity.

## ARTICLE XI
## RETENTION OF JURISDICTION

Notwithstanding the entry of the Confirmation Order and the occurrence of the Effective Date, on and after the Effective Date, the Bankruptcy Court shall retain exclusive jurisdiction over all matters arising out of, or related to, the Chapter 11 Cases and the Plan pursuant to sections 105(a) and 1142 of the Bankruptcy Code, including jurisdiction to:

1. allow, disallow, determine, liquidate, classify, estimate, or establish the priority, secured or unsecured status, or amount of any Claim or Interest, including the resolution of any request for payment of any Administrative Claim (including Fee Claims) and

the resolution of any and all objections to the secured or unsecured status, priority, amount, or allowance of Claims;

2. resolve any matters related to: (a) the assumption, assumption and assignment or rejection of any Executory Contract or Unexpired Lease to which a Debtor is party or with respect to a Debtor may be liable, and to hear, determine and, if necessary, liquidate, any Claims arising therefrom; (b) any potential contractual obligation under any Executory Contract or Unexpired Lease that is assumed; and (c) any dispute regarding whether a contract or lease is or was executory, expired, or terminated;

3. ensure that distributions to holders of Allowed Claims are accomplished pursuant to the provisions of the Plan;

4. adjudicate, decide, or resolve any motions, adversary proceedings, contested or litigated matters, and any other matters, and grant or deny any applications that may be pending on the Effective Date;

5. adjudicate, decide, or resolve any and all matters related to section 1141 of the Bankruptcy Code;

6. adjudicate, decide, or resolve any and all matters related to the governance, operations, and administration of the Liquidating Trust;

7. enter and implement such orders as may be necessary or appropriate to execute, implement, or consummate the provisions of the Plan and all contracts, instruments, releases, indentures, and other agreements or documents created in connection with the Plan, the Plan Supplement, or the Disclosure Statement;

8. enter and enforce any order for the sale of property pursuant to sections 363, 1123, or 1146(a) of the Bankruptcy Code;

9. adjudicate, decide, or resolve any cases, controversies, suits, disputes, or Causes of Action that may arise in connection with Consummation, including interpretation or enforcement of the Plan or any Entity's obligations incurred in connection with the Plan;

10. issue injunctions, enter and implement other orders, or take such other actions as may be necessary or appropriate to restrain interference by any Entity with Consummation or enforcement of the Plan;

11. adjudicate, decide, or resolve any cases, controversies, suits, disputes, or Causes of Action with respect to the releases, injunctions, and enter such orders as may be necessary or appropriate to implement such releases, injunctions, and other provisions;

12. adjudicate, decide, or resolve any cases, controversies, suits, disputes, or Causes of Action with respect to the repayment or return of distributions and the recovery of additional amounts owed by the holder of a Claim for amounts not timely repaid;

13. enter and implement such orders as are necessary or appropriate if the Confirmation Order is for any reason modified, stayed, reversed, revoked, or vacated;

14. determine any other matters that may arise in connection with or relate to the Plan, the Disclosure Statement, or the Confirmation Order;

15. enter an order or final decree concluding or closing of the Chapter 11 Cases;

16. adjudicate, decide, or resolve any and all disputes arising from or relating to distributions under the Plan;

17. consider any modifications of the Plan to cure any defect or omission or to reconcile any inconsistency in any Bankruptcy Court order, including the Confirmation Order;

18. determine requests for the payment of Claims entitled to priority pursuant to section 507 of the Bankruptcy Code;

19. hear and determine disputes arising in connection with the interpretation, implementation, or enforcement of the Plan or the Confirmation Order, including disputes arising under agreements, documents, or instruments executed in connection with the Plan;

20. hear and determine matters concerning state, local, and federal taxes in accordance with sections 346, 505, and 1146 of the Bankruptcy Code;

21. hear and determine all disputes involving the existence, nature, scope, or enforcement of any exculpations, discharges, injunctions, and releases granted in connection with and under the Plan; and

22. enforce all orders previously entered by the Bankruptcy Court.

The Bankruptcy Court shall retain non-exclusive jurisdiction to hear any other matter not inconsistent with the Bankruptcy Code.

## ARTICLE XII
## MISCELLANEOUS PROVISIONS

A. *Immediate Binding Effect.*

Notwithstanding Bankruptcy Rules 3020(e), 6004(h), 7062, or otherwise, upon the occurrence of the Effective Date, the terms of the Plan and the Plan Supplement shall be immediately effective and enforceable and deemed binding upon the Debtors, the Liquidating Trust, any and all holders of Claims or Interests, all Entities that are parties to or are subject to the settlements, compromises, releases, discharges, and injunctions described in the Plan, each Entity acquiring property under the Plan, and any and all non-Debtor parties to Executory Contracts and Unexpired Leases with a Debtor.

B. *Additional Documents.*

On or before the Effective Date, the Debtors may File with the Bankruptcy Court such agreements and other documents as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan. The Debtors or Liquidating Trust, as applicable, and all holders receiving distributions pursuant to the Plan and all other parties in interest may, from time to time, prepare, execute, and deliver any agreements or documents and take any other actions as may be necessary or advisable to effectuate the provisions and intent of the Plan.

C. *Statutory Committee.*

On the Effective Date, the Committee shall dissolve and all of its members, Professionals, and agents shall be deemed released of their duties, responsibilities, and obligations, and shall be without further duties, responsibilities, and authority in connection with the Debtors, the Chapter 11 Cases, the Plan, or its implementation, except with respect to applications for Fee Claims.

D. *Reservation of Rights.*

Except as expressly set forth in the Plan, the Plan shall have no force or effect unless the Bankruptcy Court enters the Confirmation Order, and the Confirmation Order shall have no force or effect if the Effective Date does not occur. None of the Filing of the Plan, any statement or provision contained in the Plan, or the taking of any action by the Debtors, with respect to the Plan, the Disclosure Statement, or the Plan Supplement shall be or shall be deemed to be an admission or waiver of any of their respective rights with respect to the holders of Claims and Interests or each other before the Effective Date.

E. *Successors and Assigns.*

The rights, benefits and obligations of any Entity named or referred to in the Plan shall be binding on, and shall inure to the benefit of any heir, executor, administrator, successor, or assign, if any, of such Entity.

F. *Notices.*

To be effective, all notices, requests and demands, to or upon the Liquidating Trust shall be in writing. Unless otherwise expressly provided herein, notice shall be deemed to have been duly given or made when actually delivered or when received and telephonically confirmed, addressed to the following:

**Liquidating Trust:**
Verdolino & Lowey, P.C.
Attn: Craig Jalbert
124 Washington Street, Suite 101
Foxboro, MA 02035
Phone: 508-543-1720
Fax: 508-543-4114

G. *Entire Agreement.*

Except as otherwise indicated, the Plan and the Plan Supplement supersede all previous and contemporaneous negotiations, promises, covenants, agreements, understandings, and representations on such subjects, all of which have become merged and integrated into the Plan.

H. *Exhibits.*

All exhibits and documents included in the Plan Supplement are incorporated into and are a part of the Plan as if set forth in full in the Plan. After the exhibits and documents are Filed, copies of such exhibits and documents shall be available upon written request to the Debtors' counsel at the address above. To the extent any exhibit or document is inconsistent with the terms of the Plan, unless otherwise ordered by the Bankruptcy Court, the non-exhibit or non-document portion of the Plan shall control.

I. *Severability of Plan Provisions.*

If, before Confirmation, any term or provision of the Plan is held by the Bankruptcy Court to be invalid, void, or unenforceable, the Bankruptcy Court shall have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void, or unenforceable, and such term or provision shall then be applicable as altered or interpreted. Notwithstanding any such holding, alteration, or interpretation, the remainder of the terms and provisions of the Plan will remain in full force and effect and will in no way be affected, impaired, or invalidated by such holding, alteration, or interpretation. The Confirmation Order shall constitute a judicial determination and shall provide that each term and provision of the Plan, as it may have been altered or interpreted in accordance with the foregoing, is: (1) valid and enforceable pursuant to its terms; (2) integral to the Plan and may not be deleted or modified without the Debtors' consent; and (3) non-severable and mutually dependent.

J. *Votes Solicited in Good Faith.*

Once the Confirmation Order becomes a Final Order, the Debtors and the Committee will be deemed to have solicited votes on the Plan in good faith and in compliance with the Bankruptcy Code, and pursuant to section 1125(e) of the Bankruptcy Code, the Debtors and their agents, representatives, members, principals, shareholders, officers, directors, employees, advisors and attorneys will be deemed to have participated in good faith and in compliance with the Bankruptcy Code in the offer, issuance, sale and purchase of Securities offered and sold under the Plan (if later determined that any Securities are in fact offered and sold under the Plan) and any previous contemplated plan and, therefore, no such parties will have any liability for the violation of any applicable law, rule, or regulation governing the solicitation of votes on the Plan or the offer, issuance, sale, or purchase of any Securities offered and sold under the Plan or any previous contemplated plan.

K. *Closing of Chapter 11 Case.*

The Liquidating Trustee shall promptly after the full administration of the Chapter 11 Cases, File with the Bankruptcy Court all documents required by Bankruptcy Rule 3022 and any applicable order necessary to close the Chapter 11 Cases.

L. *No Admission Against Interest.*

Neither the filing of the Plan, the Disclosure Statement, nor any statement contained therein, is or shall be deemed an admission against interest. In the event that this Plan is not consummated, neither this Plan, the Disclosure Statement, nor any statements contained therein may be used or relied upon in any manner in any suit, action, proceeding, or controversy within or outside the Bankruptcy Court involving the Debtors.

M. *No Waiver.*

Except as otherwise specifically provide herein, nothing set forth in this Plan or the Disclosure Statement shall be deemed a waiver or release of any claims, rights, or Causes of Action against any Person other than the Debtors.

N. *Headings.*

The article and section headings used in the Plan are inserted for convenience and reference only and neither constitutes a part of the Plan nor in any manner affects the terms, provisions, or interpretation of the Plan.

O. *Governing Law.*

Except to the extent the Bankruptcy Code, the Bankruptcy Rules, or other federal law is applicable, or to the extent otherwise provided in the Plan, the rights and obligations arising under the Plan, shall be governed by, and construed and enforced in accordance with the laws of the Commonwealth of Massachusetts, without giving any effect to the principles of conflicts of law or such jurisdiction.

P. *Conflicts.*

Except as set forth in the Plan, to the extent that any provisions of the Disclosure Statement, the Plan Supplement or any other order (other than the Confirmation Order) referenced in the Plan (or any exhibits, schedules, appendices, supplements or amendments to any of the foregoing), conflict with or are in any way inconsistent with any provision of the Plan, the Confirmation Order shall govern and control and then the Plan.

Dated: February 24, 2017

Respectfully Submitted,

**CLARK-CUTLER-McDERMOTT COMPANY**
**CCM AUTOMOTIVE LAFAYETTE LLC**

By: ______________________

Name: James T. McDermott

Their Authorized Representative